## GOODRICH v. FERRIS et al.

(Circuit Court, N. D. California. May 21, 1906.)

No. 13,592.

1. WILLS—VALIDITY OF PROVISIONS—CONCLUSIVENESS OF DECREE OF PROBATE COURT—JURISDICTION OF EQUITY.

A court of equity is without jurisdiction of a suit to set aside a decree of a superior court of California, entered after due notice given as required by statute, distributing the estate of a testator in accordance with his will, which had been duly probated, and to have the will declared invalid, unless under extraordinary circumstances where fraud or a breach of trust extrinsic to the proceedings is shown; and such a case is not made merely by an allegation that complainant, who was not an heir, but claims an interest in the estate through his deceased wife, was told by the executor after her death that she had no interest in the estate, which statement was true under the terms of the will, previously probated without objection, which gave her a life interest only.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 917.]

2. JUDGMENTS—CONCLUSIVENESS—PROBATE DECREE—DISTRIBUTING ESTATE.

A decree of a superior court of California in probate, distributing the estate of a testator made after the notice prescribed by statute, is conclusive upon all interested parties, unless set aside in direct proceedings for review.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1303.]

3. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—DISTRIBUTION OF DECEDENT'S ESTATE—NOTICE.

A proceeding to secure a distribution of the estate of a decedent is essentially one in rem in which the parties interested may be bound by constructive notice, the reasonableness of which must be determined with reference to the requirements of ordinary cases; and notice given by posting notices 10 days before the hearing is not unreasonably short, and constitutes due process of law as against all parties without regard to their place of residence.

In Equity. On demurrer to amended bill.

Johnson & Johnson (James A. Louttit, Henry Arden, and Monroe & Cornwall, of counsel), for complainant.

Henry Ach, William Thomas, and J. W. Dorsey (Fred L. Berry, of counsel), for defendants.

MORROW, Circuit Judge. This is a suit in equity, brought by the complainant, a citizen of the state of New York, against the defendants, citizens of the state of California, for the purpose of obtaining a decree adjudging that a final decree of distribution entered and recorded in the superior court of the city and county of San Francisco, state of California, in the matter of the estate of Thomas H. Williams, deceased, on January 5, 1897, is fraudulent and of no force and effect against the complainant, and that the defendants be decreed to be trustees for the complainant of that part of the real estate of Thomas H. Williams, deceased, which complainant claims he is entitled to receive as heir at law of his deceased wife, who, it is alleged, was an heir of Thomas H. Williams, deceased. The court is also asked to appoint a receiver of the said property, to take and hold the same, and to collect the rents and profits thereof during the pendency of this suit, and upon the final decree to make such disposition of the property as in and by the decree directed, and that an accounting be had, under the direction of the court, of the real estate which came into the hands of the defendants under said decree of distribution and the rents and profits thereof; that upon said accounting it be ascertained what portion of said real estate and of the rents and profits thereof the complainant is entitled to receive from the defendants and each of them; and that, as to such portion, they and each of them be ordered and decreed severally to convey and transfer to the complainant such part so found due from each of them, or the value thereof. The bill of complaint was filed May 19, 1904, and an amended bill January 16, 1905.

The questions submitted to the court for determination arise upon a demurrer to the bill of complaint as amended. A brief statement of the facts of the case, as they appear in the bill of complaint and the amended bill, will disclose the matters in controversy. Thomas H. Williams, a resident of the city and county of San Francisco, and a citizen of the state of California, died on the 28th day of February, 1886, seised and possessed of a large amount of real property situated in the state of California. This real property was subsequently appraised at the value of $1,459,445.08 and certain personal property at the value of $6,355. At the time of his death, Thomas H. Williams left no wife surviving him, and his only heirs at law were his children and lawful issue mentioned in the bill of complaint. The children were Sherrod, Thomas H., Jr., Mary Bryant, Percy, and Bryant. At the time of the death of Thomas H. Williams, his daughter Mary Bryant was the wife of Frank S. Johnson, by whom she had issue of the marriage with him, one son, the defendant, Frank Hansford Johnson, who at the time of the filing of the bill of complaint was about 18 years of age. Mary was divorced from Frank S. Johnson December 29, 1888, and on March 11, 1889, Frank S. Johnson was appointed guardian of Frank Hansford Johnson. On December 7, 1889, Mary married the complainant, and on October 3, 1893, Mary died. Percy married Bessie L. Trahern August 1, 1888. A child was born to Percy and Bessie November 12, 1889. This child died on February 16, 1890. Percy died October 3, 1890, leaving

no issue. It is alleged in the amended bill of complaint, upon information and belief, that the defendant Thomas H. Williams, Jr., has acquired all the right, title, and interest of the said Bessie in and to the estate of the said Percy, which comprises all of the interest of the latter in the estate of said Thomas H. Williams, deceased. Sherrod died August 2, 1888, leaving no wife or issue. Bryant died May 2, 1893, unmarried and without lawful issue. Thomas H. Williams left two papers purporting, respectively, to be his last will and testament and codicil thereto. Copies of the will and codicil are attached to the bill of complaint. The will and codicil were admitted to probate in the superior court of the city and county of San Francisco, probate division, on the 6th day of April, 1886, and letters testamentary issued by the court to George E. Williams, a brother of the decedent, and the executor and trustee named in the will, who thereupon qualified as such executor and took possession of the estate of Thomas H. Williams, deceased, as such executor and as testamentary trustee under said will, and entered upon the execution of said trust and carried on the business in which said Thomas H. Williams was engaged at the time of his death, and continued so to do until the 5th day of January, 1897, when a decree of distribution was entered in the superior court.

The will of Thomas H. Williams contained the following provisions, among others, relating to the distribution of the estate:

"Item 4. When the term of three years after my death, shall have elapsed, unless the executor, herein named, shall for good cause extend it for two years, or in case there be another executor, three of my children, or representatives shall by writing, extend it for two years, distribution of my estate, shall be made, as herein directed."

"Item 8. I hereby appoint my brother George E. Williams, executor of this will, and that no bonds, or security, be required of him, for the execution of the trust, or discharge of the office."

"Item 9. That no confusion may arise, in reference to title to any property of my estate, I hereby devise that all of the property of which I die the owner, or which may in any way become part of my estate, vest absolutely in my executor herein appointed, and his successor, successors in office. That the title thereto be held by him, or his said successor, or successors in office, until by death of my said several children the property set aside for each be vested in their respective heirs, as herein provided, said executor, or his successor, or successors, to hold said property, and every part thereof, in trust for the uses and purposes in this will mentioned, and for the use and benefit of my children as herein provided.

"Item 10. To the executor, herein appointed, I give, and grant, the following powers, and authority: (1) To carry on all business, in which I was engaged, at the time of my death. (2) To borrow money for the use of such business, or the benefit of my estate. (3) To bargain, sell and convey, any portion, or part, of the property of my estate, without any order of court, or other proceeding, and to execute all mortgages, or conveyances, necessary, or deemed proper, by him. (4) To sell and convey, any part, or parcel, of property, set aside, for any one of my children, after distribution, as herein provided for, that he may reinvest the proceeds, for the distributee. In that case, his conveyance to be valid, may only recite, that he sells, for reinvestment, and when he reinvests, it will be only necessary, to show by the conveyance, for whose ultimate benefit, the property is taken. It will be understood, that the term 'conveyance,' as here used, implies transfers of property, real, personal, or mixed. It being understood further, that no action of any court, or consent of any person be necessary to execute these powers,

having entire confidence, that he will act for the benefit of my children. I request of said executor to have all income of my estate, or sales of property, invested in property, or government securities, or in notes, bonds, or mortgages, for which property has been sold, at the time of distribution; except the fifty thousand ($50,000) dollars, absolutely given Percy, which may be given in money, or property as desired."

"Item 12. In the event my brother, executes this will, I direct that the court, having jurisdiction, make him a fair, and liberal allowance, for all services, without reference to statutory, or other fees. In case of another appointment, I direct that the compensation of the executor, so appointed, be fixed before, and at the time of appointment, and that he be paid accordingly, and not otherwise. Will also direct, that the appointment of one of my sons, may not be objectionable, and in conveyance of property, in which he may be distributee, his personal assent may be expressed in the same instrument.

"Item 13. This will is lengthy, but I hope it clearly expresses my purposes thus:

"That with the exception of fifty thousand ($50,000) dollars, the property of my estate, is to be 'set aside' in and for the benefit of my children, Thomas H., Jr.; Mary Bryant; and Percy; and Bryant, at the time of distribution, in the proportions of two hundred thousand ($200.000) dollars to Mary, and one hundred thousand ($100,000) dollars to each of the others, with division between Mary, Tom, and Percy, of the remainder of the estate. That each of said children is to have the net income of the estate 'set aside' for them respectively. That the legal title is to be, and remain in an executor, of the whole estate and each part thereof, until death inflicts her blows. That when a child dies, the estate 'set aside,' for him, or her, vests absolutely in his or her heirs as herein provided, except in case of Bryant as hereinbefore mentioned, leaving the title, in remainder, in the executor, until each of the children, herein named, be dead."

It is alleged that, under the laws of the state of California, and especially under sections 715, 716, 749, and 771 of the Civil Code of California, the trust attempted to be created in and by said will was at the time of its creation, and ever since has been, void; that the absolute power of alienation of the property of said Thomas H. Williams included in said attempted trust was by said will, and by the terms of the trust thereby attempted to be created, suspended for the term of three years, and not for a period measured by the continuance of lives in being; and that, as to the property included in said attempted trust, the said Thomas H. Williams died intestate, and that at his death the said property passed to and vested in his heirs at law in the proportions mentioned in the bill of complaint.

In the final decree of distribution, entered in the superior court on January 5, 1897, it was recited that Mary Bryant Williams, named in the last will and testament of the decedent, was a daughter of the said testator, and that during her lifetime she was married to Frank S. Johnson, and thereafter, and subsequent to the admission to probate of the last will and testament of the said decedent, the said Mary Bryant Johnson died, leaving as her sole surviving issue Frank Hansford Johnson; that Percy Williams, Bryant Williams, and Sherrod Williams, sons of the testator, since the publication and admission to probate of the last will and testament of the decedent, had died without issue; and that Thomas H. Williams, Jr., and Frank Hansford Johnson, were the residuary and sole devisees and legatees of the said testator. It was further recited that George E. Williams,

the executor named in the last will and testament, was a brother of the decedent, and that it was provided in the will that, in the event he executed the duties of an executor, the court having jurisdiction should make him a fair and liberal allowance for all services, without reference to statutory or other fees; and it appearing to the satisfaction of the court that the executor had rendered great, extraordinary, and valuable services to said estate, and had performed all the labors thereof, the court, in view of the provision of the will, allowed him the sum of $100,000 as compensation for his services, in addition to all sums theretofore paid on account of said services; and, it appearing from the account on file that there was no money on hand with which to pay said sum, the court made said allowance a specific charge and lien upon certain real estate described in the decree and distributed to Thomas H. Williams, Jr.

It is alleged in the bill of complaint that in the proceedings and at the final hearing in the superior court, which resulted in the decree of distribution of the estate of Thomas H. Williams on the 5th day of January, 1897, the only parties to such proceedings were Thomas H. Williams, Jr., Frank Hansford Johnson, a minor, by his guardian, Frank S. Johnson, and George E. Williams, the executor, and that they consented to the decree. On December 17, 1899, George E. Williams died, leaving his surviving wife, Jennie R. Williams, and their daughter, Georgia E. Williams, his heirs at law. Thereafter such proceedings were had in the superior court of the city and county of San Francisco that the defendant John W. Ferris was appointed trustee of the estate of Thomas H. Williams, deceased, in the place and in the stead of George E. Williams, deceased. The bill of complainant charges that in all the proceedings in the superior court the existence of complainant and his interest in the estate was fraudulently concealed from the court; that he had no notice or knowledge of any of the proceedings taken for the distribution of the estate, or of the action or decree of the court thereon; and that, in said proceedings for said final decree of distribution, no day was ever given to the complainant, and that his first knowledge thereof was in November, 1903.

It is further alleged that the complainant has not been in the state of California at any time since the death of his wife, except for a few days immediately after her death, in 1893, when he brought the remains to San Francisco for interment; that while in San Francisco the said George E. Williams declared to the complainant that his wife had no interest in the estate of her deceased father or property of any kind or character whatever, and that she left no estate; that at the time of the death of complainant's wife she was indebted to a firm of jewelers in the city of New York to the amount of several thousand dollars, and the creditors demanded payment of such indebtedness from the complainant; that when in San Francisco complainant informed George E. Williams of that fact and inquired of him whether the said wife of complainant had left any property or estate available for the payment of said demand, and the said George E. Williams assured complainant and represented, stated, and declared to him

that she had left no property or estate whatever, and complainant believed and relied upon the representations, declarations, and statements of said George E. Williams, and was induced thereby to forbear any further inquiry relating to the property or estate of his deceased wife, and, being so induced, he did thereafter abstain from any such inquiry, and he knew nothing at all of the fact that he was entitled to any property as heir at law of his deceased wife, or under the will of Thomas H. Williams, deceased, until the month of November, 1903.

In the amended bill of complaint it is alleged that said George E. Williams was by profession an attorney at law of many years practice and of great experience, and for a number of years he was a judge of the superior court of the state of California; that complainant is not a lawyer, never was, and knew nothing of the laws of California; that complainant knew nothing about the will of Thomas H. Williams, deceased, was not familiar with its terms, and was not aware of the nature or extent of the provisions it made for his wife. All he knew was that his wife during their married life was receiving money from her father's estate in California. How much she was thus receiving, and had received, complainant did not know, and during all their married life they lived in New York City, where complainant has resided for 20 years last past.

It is further alleged in the original complaint that complainant was entitled to reasonable and sufficient notice of the proceedings in the superior court of the city and county of San Francisco upon the filing of the petition for distribution of the estate; that the orders were obtained by the defendants, Thomas H. Williams, Jr., Frank Hansford Johnson, through his guardian, and George E. Williams, purporting to fix the date for the hearing of said petitions and directing notices thereof to be given by posting of the same in three public places in said city and county of San Francisco, to wit, one at the public morgue, one in the place where said court was held, and one at the United States Court building; that said posting was by said order directed to be made 10 days before the day fixed for the hearing of said petition for distribution; that the said period of 10 days was an insufficient time for the plaintiff, who resided in the city of New York, to have by any possibility obtained knowledge of said notice and to have prepared for the hearing of said proceedings for distribution; that said notice, and the proceedings in pursuance thereof, were not and did not constitute due process of law, within the meaning of section 1 of article 14 of the Constitution of the United States; and that complainant never had his day in court in said proceedings for distribution, and that the same were and are void. And complainant alleges that, by reason of the proceedings had and taken by the defendants in the matter of the distribution of said estate, complainant has been deprived of his interest in said property of said decedent without due process of law, within the meaning of said section 1 of article 14 of the Constitution of the United States.

The will of Thomas H. Williams is dated the 29th day of October, 1885, and the codicil the 23d day of January, 1886. The will gave

145 F.—54

to the daughter the testator's household furniture and pictures, and, to be set aside absolutely for her benefit, in property or money realized from sales of property, $200,000; then, after distributing $350,000 to three of his remaining four children, and providing for the investment of $1,000 each for the benefit of a niece, Mary Thomas, and his grandson Frank Hansford Johnson, the will provided that the remainder of the estate should be set aside in equal shares for his daughter Mary Bryant and his two sons, Thomas H., Jr., and Percy. Item 6 of the will provides as follows:

"Item 6. The first fifty thousand ($50,000) dollars, given to Percy, is intended to vest in him absolutely. But the remainder of the estate, is only intended for the use and benefit of the children, during their respective lives, with remainder in fee to those herein named. If my daughter dies, leaving two children, or more, or one child, and the children, or child of another, then the estate set aside for her benefit, shall vest in said child, or children, or grandchildren per stirpes—as the case may be. If she leaves one child, or the child, or children of one child, then said estate shall vest one-half in said child, or said grandchild, or children, and the other half in Thomas H. Jr."

At the time this will was executed, and at the time of the death of the testator, Mary Bryant was the wife of Frank S. Johnson. Mary Bryant was divorced from Frank S. Johnson December 29, 1888, and was married to the complainant December 7, 1889. She died October 3, 1893, and under the terms of the will Frank Hansford Johnson and Thomas H. Williams, Jr., were the only heirs to her interest in her father's estate.

The purpose of the bill of complaint is now reasonably clear in such detail as is material to the questions before the court. The purpose of the bill is to secure a decree of his court declaring the will of Thomas H. Williams, deceased, invalid and void by reason of certain of its provisions providing a trust for the administration of the estate which it is claimed attempted to suspend the power of alienation for a period of time longer than during the continuance of lives of persons in being at the creation of the limitation or condition; that the said Thomas H. Williams therefore died intestate, and that his estate descended to his heirs under the law of the state; that complainant's wife was such an heir, and under the law she inherited from her deceased father's estate and also from her deceased brothers' estates, and that the complainant was an heir to his deceased wife's estate; that in the probate proceedings in the superior court of the state, with respect to the estate of Thomas H. Williams, deceased, the existence of the complainant and his interest in that estate was fraudulently concealed from the court, and that the decree of distribution entered in the superior court was fraudulent and void as against complainant; that the notices of the hearing in the superior court upon the petitions for distribution of the estate were insufficient, in point of time, to give the complainant knowledge of such hearing; that the notices and the proceedings in pursuance thereof did not constitute due process of law, and deprived the complainant of his interest in said estate without due process of law, contrary to section 1 of article 14 of the Constitution of the United States.

The demurrers of the several defendants raise the question, among others, whether, upon the facts stated, a court of equity in this state can decree the relief prayed for in the bill of complaint. The first inquiry, therefore, relates to the nature and character of the jurisdiction of the superior court of the state in probate proceedings. In the case of Broderick's Will, 21 Wall. 503, 22 L. Ed. 599, the inquiry resulted in the Supreme Court defining certain limitations to which a court of equity is subject in dealing with the proceedings of a probate court. A suit in equity had been brought in this court by the alleged heirs of Senator Broderick, to set aside the probate of his will, to have the same declared a forgery, and to recover the assets of Broderick's estate, much of which consisted of real property. The defendants were the executors and several hundred persons who were in possession of portions of the real estate, claiming ownership thereof as purchasers at sales made by the executors. The estate had been administered upon, and distribution had been fully made before the institution of the suit. It was contended by the defendants that a court of equity had no jurisdiction of the subject-matter of the suit; the same being vested exclusively in the probate court of the city and county of San Francisco. In sustaining this objection, the court said:

"As to the first point, it is undoubtedly the general rule, established both in England and this country, that a court of equity will not entertain jurisdiction of a bill to set aside a will or the probate thereof. The case of Kerrick v. Bransby, decided by the House of Lords in 1727, is considered as having definitely settled the question. Whatever may have been the original ground of this rule (perhaps something in the peculiar constitution of the English courts), the most satisfactory ground for its continued prevalence is that the constitution of a succession to a deceased person's estate partakes, in some degree, of the nature of a proceeding in rem. in which all persons in the world who have any interest are deemed parties, and are concluded as upon res judicata by the decision of the court having jurisdiction. The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; and, consequently, that there should be some convenient jurisdiction and mode of proceeding by which this devolution may be effected with least chance of injustice and fraud, and that the result attained should be firm and perpetual. The courts invested with this jurisdiction should have ample powers, both of process and investigation, and sufficient opportunity should be given to check and revise proceedings tainted with mistake, fraud, or illegality. These objects are generally accomplished by the constitution and powers which are given to the probate courts, and the modes provided for reviewing their proceedings. And one of the principal reasons assigned by the equity courts for not entertaining bills on questions of probate is that the probate courts themselves have all the powers and machinery necessary to give full and adequate relief. * * * The English authorities were fully discussed by Lord Lyndhurst in Allen v. McPherson, and by him and Lords Cottenham. Brougham, Langdale, and Campbell in the same case on appeal in the House of Lords. In that case a codicil was revoked by a subsequent one, in consequence of false and fraudulent representations on the part of the person to be benefited by the change, prejudicing the testator against the person injured thereby. A bill was filed praying that the executor might be declared trustee for the first legatee to the extent of the legacies revoked. The bill was demurred to and dismissed, and the whole discussion turned upon the question whether or not the ecclesiastical court had jurisdiction to inquire of the matters

of fraud alleged, and, the court being of opinion that it had jurisdiction, the decree was affirmed. The court came to the conclusion that the ecclesiastical court had power to refuse probate of the revoking codicil, and, indeed, had had the question before it; but after investigating the facts had granted the probate. 'If,' said Lord Lyndhurst, 'an error has been committed in this or any other respect, which I am very far from supposing, that would not be a ground for coming to a court of equity. The matter should have been set right upon appeal. But the present is an attempt to review the decision of the Court of Probate, not by the judicial committee of the Privy Council, the proper tribunal for that purpose, but by the court of chancery. I think this cannot be done. It was formerly, indeed, considered that fraud in obtaining a will might be investigated and redressed in a court of equity; but that doctrine has long since been overruled.' Lord Lyndhurst also reviewed the cases in which a legatee or executor had been declared trustee for other persons, and came to the conclusion that they had been either questions of construction, or cases in which the party had been named a trustee, or had engaged to take as such, or in which the Court of Probate could afford no adequate or proper remedy. The effect of his reasoning was that, where a remedy is within the power of the ecclesiastical court, either by granting or refusing probate of the whole will or codicil, or of any portion thereof, a court of equity will not interfere. And this was the view of a majority of the law lords on that occasion; Lords Brougham and Campbell agreeing with Lord Lyndhurst."

The case of Broderick's Will arose under the judicial system provided by the old Constitution of the state of California, wherein the probate court was an inferior court. Under the present Constitution, and the laws passed in pursuance of its provisions, jurisdiction of all matters of probate is vested in the superior court, a court of original general jurisdiction in all cases in law and equity (section 5, art. 6, Const. 1879, and section 76, Code Civ. Proc.), and the reasons for holding that the probate proceedings in the superior court are not open to review by a court of equity are even greater now than they were with respect to proceedings in the former probate court.

In Toland v. Earl, 129 Cal. 148, 61 Pac. 914, 79 Am. St. Rep. 100, the Supreme Court of the state, referring to some of its former decisions, calls attention to this difference between the old and new systems, and holds that cases for the construction of wills and of trusts thereunder arising under former Constitution, which vested all equity jurisdiction in the district courts and established separate probate courts, were inapplicable to the judicial system established under the new Constitution, which vests both equity and probate jurisdiction in the superior court, and that one judge of the superior court, sitting in equity, could not instruct another sitting in probate. The action in the case was brought by the administrator with the will annexed, for the purpose of having the probate court instructed as to what distribution should be made of the estate under the will. The superior court had entertained jurisdiction of the case, but the Supreme Court reversed the judgment and directed the superior court to dismiss the action. In the opinion, written by Mr. Justice Temple, he says:

"The Legislature has provided a special proceeding for the administration of the estates of deceased persons, whether testate or intestate. For the conduct of this special proceeding a minute code has been provided, through which every purpose for which resort was formerly had to courts of equity is attained. * * * If a legacy falls due, or a partial distribution

of an intestate estate should be made, the probate court can order the personal representative to make the payment or distribution. This will also be done upon notice, and, the proceeding being in rem, when such notice is given the whole world is brought in. Surely, this must be exclusive of a suit in equity in which the parties are necessarily limited. The same is true as to the settlement of the accounts of the administrator or executor. Elaborate provision is made to force the executor or administrator to account, and in this accounting the creditors and distributees are interested. In an insolvent estate it is a necessary preliminary to the marshaling of the assets for payment of creditors, and it is always a necessary preliminary to a final distribution. This settlement made after the prescribed notice is conclusive upon all interested parties. But the most conclusive reason, to my mind, why this jurisdiction must be held to be exclusive is that, under our probate system, all deraignment of title to the property of deceased persons is through the decree of distribution entered as the final act in the administration of an estate, whether testate or intestate. No one will contend that this decree can be made by any other court or in any other proceeding. It constitutes not only the law of personalty, but also the law of real estate. In other jurisdictions this decree is also held to be conclusive. But generally it concerns only personal property, and the power to make it does not involve the power to construe trusts in land created by the will. Here the probate court not only may, but should, and often must, construe the trusts created by the will. After the decree is made the will practically drops out of existence. The law of the estate is the decree and not the will, and, as I have said, all deraignments of title are through it. Goad v. Montgomery, 119 Cal. 552, 51 Pac. 681, 63 Am. St. Rep. 145. The proceeding differs much from the systems of administration where the personal property 'goes to the personal representative and the land to the heir. Here the relation of the probate court to the executor or administrator is much more analogous to the relation of a court to its receiver. And here, too, the entire probate proceeding from the grant of administration, or the probate of a will, is calculated to give notice to the heirs of a decedent, and special notice is required to be given of the time when distribution will be made, where all interested parties can be heard. The distribution is declared to be conclusive upon the whole world."

But the case of Sohler v. Sohler, 135 Cal. 323, 67 Pac. 282, 87 Am. St. Rep. 98, is cited by the complainant in support of the claim that the defendants have been guilty of such fraud as would authorize a court of equity to decree that they hold the distributed estate as trustees for the complainant to the extent of his interest therein. The action in that case was brought to set aside the decree of distribution entered in the estate of Sohler deceased, or so much of it as distributed one-eighth of the estate to one Reuss, who was fraudulently and falsely made one of the distributees upon the representation to the court by the widow, who was the executrix of the will, that he was a son of the decedent. The will of the decedent left all the property to the widow, and the children were pretermitted heirs. In the probate proceedings the court held that the widow was entitled to only a one-half interest in the estate of the decedent, and that the children were entitled to equal parts of the other half. When the estate was ready for distribution, the executrix in her petition set forth the names of the minor children of the decedent, and included Reuss as one of them. The fact was that Reuss was not a son of the decedent, but was a son of the executrix, and these two—mother and son—connived and conspired together to mislead and deceive the court into making its decree so that one-eighth of the property of the estate was distrib-

uted to Reuss in fraud of the rights of the minor children of the testator, for whom the executrix was the natural guardian.

It was urged, against the sufficiency of the complaint setting up these facts, that it was the exclusive province of the court in probate to determine heirship and decree distribution, and that the complaint went no further than to charge intrinsic fraud, in that Reuss succeeded by false and perjured evidence in obtaining a favorable decision upon a matter essential to the proceeding, and one in which the court was bound to exercise its judgment, and, notwithstanding that the decision was obtained by such evidence, this fact afforded no ground for relief in equity. "If this were all the complaint discloses," said the Supreme Court, "the respondent's contention would be undoubtedly sound, for it is the general rule that intrinsic fraud, fraud by which a decree or judgment is obtained by false evidence upon issues within the case, is not such fraud as equity will relieve against; the theory being that the losing litigant has had his day in court, and that while it must always remain a misfortune that private causes shall be lost by foresworn testimony, yet stronger than this consideration is that which declares it to be the policy of the law to make an end of litigation, and in the nature of things there never could be a final judgment if every judgment was open to avoidance upon the charge that fraudulent evidence had been introduced in its procurement. Therefore, it is the general rule that extrinsic fraud only will form the basis of such relief as is here sought; extrinsic fraud consisting in the failure to give legal notice to the adversary, the prevention of him or his witnesses from attending the trial, and the like. But, when we come to scan the allegations of this complaint, it will be discovered that there is more alleged than the mere procurement of this decree by false evidence. The executrix of the estate was not alone the trustee of all of the heirs of the estate and of all the parties in interest thereto and thereunder. She was the mother of these minor plaintiffs, had their actual custody and control, and, as their natural guardian, was chargeable with all the high duties pertaining to that relationship. As executrix merely, it might be argued that she was a disinterested party, having no concern whatsoever in the question of heirship or right of distribution, standing indifferent between the parties, and interested only in carrying into effect the determination of the court upon these questions. But, as the mother and natural guardian of these plaintiffs, her position was a very different one. She was under most solemn obligation to protect the legal rights of her infant and dependent offspring. She was under like obligation to disclose to the court, on their behalf and in their interest, all knowledge which she possessed, and she was under the same obligation to see that their legal claims to the estate were properly presented before the court in probate, and with peculiar force did this duty press upon her, in view of the fact that during all of this time she was executrix of, and administered upon, the estate through which her children were to derive their property. Such being her position, it was charged that in violation of this duty, and of the rights of her minor children, she connived with her adult son—not an heir to the estate of the de-

ceased—to procure for him a distributive portion of that estate, and that the conspiracy was carried to a successful termination. Here certainly is a charge of concealment upon the part of the guardian, when she should have spoken in the interest of her wards, and collusion upon the part of the guardian with another not in interest in the estate, to the end that that other might despoil the wards of their rightful inheritance. It cannot to this be answered that the probate proceeding upon distribution was not an adversary proceeding. It becomes adversary in every case where there are conflicting claims, and where there be not the most perfect understanding and harmony between the claimants. The moment heirship was set up by the false claimant, Reuss, that moment between him and the rightful heirs an adversary proceeding was at issue, and from that moment it became the duty of the guardian of these minor heirs to see that the fullest presentation of their claims was put before the court. This, by conspiracy with her codefendant, it is asserted she did not do, and it is clear that her fraud in pushing on behalf of Reuss his false claim to heirship and distribution, and in concealing the truth from her own minor children, the rightful heirs, and in leaving them in ignorance that they were thus to be deprived of their patrimony, was fraud extrinsic to the case, which prevented their being properly represented at the hearing, or from being represented at all."

The court concluded that the complaint presented a case for equitable relief, and that, if the superior court found the facts to be as alleged, it would be its duty to decree that Reuss held the title to the property he had obtained from the estate, as trustee of the minor children, and that the court should compel Reuss to make conveyance and transfer to them such property, or, if a conveyance of specific property could not be had, then to hold him accountable to the complainants for the value thereof. The court refers to the allegations of the complaint as peculiar and somewhat remarkable, and so indeed they are, and, as stated, they certainly call for the interposition of a court of equity, but the allegations of the complaint under consideration in this case, do not present a parallel state of facts. The executor in this case had no such relation to the complainant as the executrix had to the complainants in that case. The complainant in this case was not a minor, and the executor was not his guardian, and, what is equally important, the complainant is not an heir of Thomas H. Williams, deceased, the distribution of whose estate is made the subject of attack in the bill of complaint. These distinguishing characteristics deprive the Sohler Case of its weight as an authority for this court in the present case.

In the Estate of Davis, 136 Cal. 590, 69 Pac. 412, one Laura E. Tracy, claiming to be the heir of Jacob Z. Davis, commenced an action in the superior court in which the probate proceedings of the estate had been conducted and the estate distributed. The complainant was not a party to such proceedings, and she alleged in her complaint, or petition, that at the time Davis died, October 28, 1896, she was living in a foreign country and had no notice of his death or the proceedings connected with the probate of his will; that she did not know that

he lived in San Francisco until after the 15th of September, 1899; that about said date she discovered that decedent was in truth and in fact a brother of her father; that thereafter, and upon May 1, 1900, she became cognizant of the fraud practiced upon her in the forgery of the will and the securing of its probate. The will was admitted to probate August 17, 1898, and the complaint or petition was filed September 7, 1900. The fraud upon which relief was sought was stated to be that the will was a forgery conceived and executed by the legatees thereunder and certain other conspirators; that it was probated upon perjured testimony, and the jury which was impaneled to pass upon certain charges of forgery and conspiracy by contestants other than the complainant, at the time the will was offered for probate, was corrupted, and thereby caused to render a verdict against contestants and in favor of the validity of the document. To this complaint or petition a demurrer was interposed and sustained, and, on appeal to the Supreme Court, it was contended by the attorney representing one interest that the proceeding was brought in the probate court to set aside the probate of the will by reason of the wrongs and frauds alleged in the petition. The attorney for the other interests contended that the proceeding had not been brought in a court of probate, but that it was a proceeding in a court of equity seeking to establish a trust and charge the legatees under the will of Davis as trustees of the estate for the benefit of the complainant. The court considered the proceedings in both aspects and determined that the petition involved the probate jurisdiction of the superior court, and that the petitioner was not entitled to relief. What the court said upon this subject is applicable to the present case:

"A proceeding relating to the probate of a will is essentially one in rem, and a statute providing for a constructive notice by publication or posting gives notice to the world. Crall v. Poso Irrigation Dist., 87 Cal. 147, 26 Pac. 797. Viewing this matter in the light of constitutional law, it is not necessary that there should be a personal notice served upon any one. And conceding that portion of the statute relating to personal service of notice discriminative against known heirs not residents of the state, and even further conceding, for present purposes alone, that such discrimination renders the statute unconstitutional as violative of the fourteenth amendment, still such concessions only affect the question of personal notice, and the law as to constructive notice still remains upon the statute books entirely valid and effective, and by that notice this petitioner was notified of the hearing of the probate of the will in common with all other interested parties.

"It is next asserted that the statute providing for constructive notice is unconstitutional, in this, that the 10 days herein provided is too short to serve as constructive notice to the world, and that, the period of time being so short, therefore the statute is unreasonable and consequently void. As before suggested, the proceeding as to the probate of a will is essentially one in rem, and in the very nature of things the state is allowed a wide latitude in determining the character of the constructive notice to be given to the world in a proceeding where it has absolute possession of the res. It would be an exceptional case where a court would declare a statute void, as depriving a party of his property without due process of law; the proceeding being strictly in rem, and the res within the state, upon the ground that the constructive notice prescribed by the statute was unreasonably short. It would seem that very few cases of that kind could be found in the books. Certainly this is not one of them. Public policy

demands that a will shall have a speedy probate, and the Legislature, recognizing that fact, has given the heir, by express enactment, one year after that probate has been decreed within which time he may attack the will. His rights are in no way concluded by the decree of probate. He has an entire year thereafter in which to attack the will, and he may attack it upon the same grounds and for the same reasons that he could attack it prior to its probate. Even the measure of evidence demanded of him for a successful attack is no different in the two cases."

With respect to the claim that the petition or complaint was a proceeding in a court of equity seeking to establish a trust, the court refers to Sohler v. Sohler, supra, as the latest expression of the court bearing upon the power of equity to deal with a decree of distribution, but the court says, "That case, upon its facts, is an exceptional one," and then refers to the case of Mulcahey v. Dow, 131 Cal. 73, 63 Pac. 158, as dealing generally with the question. In other words, the court refers to this last case as declaring the law upon the subject. Turning to that case, we find it is similar, in its general features, to the complaint under consideration. The facts were these: Arthur Waters died intestate in the city of San Francisco, leaving a wife here and a sister and nephews in other states. Administration was had upon his estate, and in due time, and after due notice, a decree of distribution was entered, which found that the wife, Elizabeth, was the only heir of her husband, and all his estate was therefore distributed to her. Subsequently she died, and the defendants in the case were her successors in interest. The plaintiffs in the case were a sister and a nephew and niece of the decedent, claiming to be his heirs at law, and asserting that the wife, Elizabeth, under the decree of distribution held their respective shares of property as an involuntary trustee. The plaintiffs were nonsuited in the superior court. On appeal to the Supreme Court the question was as to the sufficiency of the evidence to support the judgment. The court held, in substance, that a proceeding for the distribution of the estate of a deceased person is a proceeding in rem, and the decree of distribution binds all who have constructive notice thereof, and if not appealed from is conclusive as to the whole world, upon all questions of heirship; that where heirs are omitted from a decree of distribution, to enforce an involuntary trust against the distributees on the ground of fraud, if there is no showing of extrinsic or collateral fraud and no satisfactory showing of the existence of any fraud, the action cannot be maintained, and that the failure of the widow of the decedent to whom the estate was distributed to inform the relatives of her husband living in another state of the death of her husband is immaterial upon a charge of fraud; that no legal duty devolved upon her to furnish them with that information.

The case of Lynch v. Rooney, 112 Cal. 279, 44 Pac. 565, was similar to the last case, except that the ground there relied upon for equitable relief was not fraud, but mistake, and it was held that the decree of distribution was final and conclusive upon all questions of heirship. The court said:

"It is insisted that the interveners, in asking this relief, are not attacking the decree of distribution, but are asking relief thereunder. Many cases are cited to support this contention, but they fall short of the mark,

and present no question similar to the one here involved. The court in hearing the petition for distribution of the estate of Bryan Lynch, deceased, upon legal and proper notice to the entire world, took evidence as to who were the heirs ·of his estate, entitled to take the same, and thereupon made a finding of fact that Catherine Clark was a sister and the only heir, and, as a conclusion of law, held that said Catherine Clark was entitled to the entire estate. That decree has never been modified, nor even assailed, and, as far as any collateral attack is concerned, it must stand forever as binding and conclusive upon the question of heirship. Whatever counsel may say as recognizing the validity of the decree, and claiming under it, is not strictly true, for that decree declares as a fact that Catherine Clark is the only heir of Bryan Lynch; and, to give the interveners the relief here sought, that finding must be first set aside as untrue, and that cannot be done in this action. If such a thing could be done, the stability of judgments and decrees would be a thing of the past. Decrees of distribution would be as unstable as the sands, for omitted heirs from such decrees would be seeking to have involuntary trusts declared thereon at most inopportune times, and in direct opposition to the law as declared by section 1908 of the Code of Civil Procedure pertaining to the conclusiveness and finality of judgments and decrees."

The allegation of fraud or mistake attributed to Judge Williams in telling the complainant in 1893 that his wife had no interest in the estate of her deceased father, or property of any kind or character, and that she had left no property or estate whatever, does not alter the situation in the least. What Judge Williams said was at most merely the expression of an opinion. It was not the statement of a fact, and there was no confidential or .fiduciary relation existing between Judge Williams and the complainant that justified the complainant in reposing confidence in the statement. Whether the wife of the complainant left any property from her father's estate, in which the complainant had an inheritable interest, would still be a matter of opinion if at this time no decree of distribution of the estate had been entered. But there was no extrinsic or collateral fraud in the statement of Judge Williams, in whatever light it may be viewed. If it has any bearing upon any question before the court, it must be as evidence that the complainant had notice that proceedings with respect to the estate of Thomas H. Williams were pending in court, and that it was his duty to make inquiry and ascertain what rights his late wife had in her father's estate, if he desired to assert a claim as heir to her estate or for the benefit of her estate.

The next question relates to the notice of the hearing in the superior court upon the petition for the settlement of the account of the executor and for distribution of the estate. The complainant contends that as to him the notice did not amount to due process of law. The provisions of the Code of Civil Procedure with respect to the notice to be given in proceedings for the settlements of accounts of executors or administrators, and for the final distribution of estates, are as follows:

"Sec. 1633. When any account is rendered for settlement, the court, or a judge thereof, must appoint a day for the settlement thereof; the clerk must thereupon give notice thereof by causing the notices to be posted in at least three public places in the county, setting forth the name of the estate, the executor or administrator, and the day appointed for the settlement of the account. The court, or a judge thereof, may order such further notice to be given as may be proper.

"Sec. 1634. If the account mentioned in the preceding section be for a final settlement, and a petition for the final distribution of the estate be filed with said account, the notice of the settlement must state those facts, which notice must be given by posting or publication, as the court may direct, and for such time as may be ordered. On the settlement of said account, distribution and partition of the estate to all entitled thereto may be immediately had, without further notice or proceedings."

Notice was given in accordance with the requirements of these sections. But it is contended that the notice was not sufficient to afford the complainant the protection guarantied to him by the Constitution, and the case of Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520, is cited as supporting complainant's contention. That action was brought in a district court of Texas upon a promissory note to recover a personal judgment and for the foreclosure of a vendor's lien upon a tract of land in that state for the purchase of which the note sued upon was given in part payment. The defendant, residing in Virginia, was served with process in that state, requiring him to appear and answer the suit in Texas within five days. It was held that such notice was not a reasonable one and was not due process of law, but the action, although classified by the court under the statute as in rem, was inter parties. The law in such a case is clearly not applicable to the present controversy, where the proceeding was with respect to the final account and distribution of an estate, a subject-matter over which the court had exclusive jurisdiction. "A proceeding to secure a decree of distribution is essentially a proceeding in the nature of one in rem. It has none of the characteristics of a proceeding in personam." Mulcahey v. Dow, 131 Cal. 73, 77, 63 Pac. 158.

In William Hill Co. v. Lawler, 116 Cal. 359, 48 Pac. 323, the Supreme Court, in stating the effect of the constructive notice in such proceedings, says:

"By giving the notice directed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their right to any portion of the estate, and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appear and present his claim, or fail to appear, the action of the court is equally conclusive upon him, 'subject only to be reversed, set aside, or modified on appeal.' The decree is as binding upon him, if he fail to appear and present his claim, as if his claim after presentation had been disallowed by the court."

If in such proceeding the entire world is called before the court, and to enable the court to enter a valid decree the entire world must have reasonable notice, it will necessarily follow that the notice that will bind all parties must be of such nature as could reach the most distant possible party interested in the estate. To state the proposition is to show its absurdity. It would be impracticable, and, moreover, under such a rule no decree would carry with it any presumption of validity, but rather, on the contrary, invite the presumption that it was invalid. "Parties cannot thus, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest

in persons or things must be charged with knowledge of their status and condition and of the vicissitude to which they are subject. This is the foundation of all judicial proceedings in rem." Case of Broderick's Will, 21 Wall. 503, 519, 22 L. Ed. 599.

In Bellingham Bay, etc., Co. v. New Whatcom, 172 U. S. 314, 318, 19 Sup. Ct. 205, 43 L. Ed. 460, the Supreme Court of the United States was called upon to determine whether a notice of 10 days of a reassessment for street improvements was sufficient under the constitutional guaranty of due process of law. The court said:

"It may be that the authority of the Legislature to prescribe the length of notice is not absolute and beyond review, but it is certain that only in a clear case will a notice authorized by the Legislature be set aside as wholly ineffectual on account of the shortness of the time. * * * But how many days can the courts fix as a minimum? How much time can be adjudged necessary as a matter of law for preparing and filing objections? How many and intricate and difficult are the questions involved? Regard must always be had to the probable necessities of ordinary cases. No hardship to a particular individual can invalidate a general rule."

It was accordingly held that 10 days' time did not appear to be unreasonably short for presenting objections to the assessment. The same rule, applied to the present case, determines that 10 days' notice of the settlement of a final account and the distribution of an estate is not unreasonably short in ordinary cases, and the exceptional case does not change the general rule.

My opinion is that the bill of complaint does not present a case for the equitable jurisdiction of this court, and the demurrer will have to be sustained on that ground. It follows that, upon the facts stated, the bill of complaint cannot be amended to confer jurisdiction.

The bill will be dismissed.