[Civ. No. 1551. Second Appellate District.—October 20, 1915.]

## MELISSA LEATHAM NICHOLSON et al., Appellants, v. HELEN L. LEATHAM et al., Respondents.

APPEAL—JUDGMENT OF NONSUIT—INSUFFICIENT RECORD.—A judgment of nonsuit must be affirmed on appeal, where the evidence introduced and upon which the court acted is not brought up in the transcript.

ESTATES OF DECEASED PERSONS—PETITION FOR PROBATE OF WILL— CONTENTS OF—CODE PROVISIONS DIRECTORY.—The provisions of section 1300 of the Code of Civil Procedure, as to what the petition for the probate of a will shall contain, other than subdivision 1 thereof, requiring a statement of the jurisdictional facts, are, in so far as noncompliance therewith affects the jurisdiction of the court, directory.

ID.—OMISSION TO STATE NAMES OF HEIRS KNOWN TO PETITIONER— JURISDICTION—VALID ORDER ADMITTING PROBATE.—An order admitting a will to probate is not void because of the omission to state in the petition the names, ages, and residences of the heirs, legatees, and devisees of the decedent, notwithstanding the same were known to the petitioner, and an action in equity will not lie to set aside such order.

ID.—PROBATE OF WILL — PROCEEDING IN REM — JURISDICTION.—The probate of wills and the administration of estates of deceased persons are in the nature of proceedings in rem as to which jurisdiction may be obtained by publication of notice, and where a petition for the probate of a will is silent as to the names and

residences of the heirs, the court is fully empowered to make the order admitting the will to probate upon due publication of the notice required by section 1303 of the Code of Civil Procedure.

Id.—Action to Set Aside Order Admitting Will to Probate— Lack of Due Diligence—Notice of Proceedings.—An action in equity will not lie to set aside and annul an order admitting a will to probate upon the ground that the order was procured by certain alleged fraudulent acts of the executrix which prevented the heirs of the deceased from appearing at the hearing of the proceedings for the probate, where such action was not brought until after the expiration of more than five years from the admission of the will to probate, and it is shown that the plaintiffs had knowledge of the testator's death at the time of its occurrence, and that he possessed property which, in the absence of a will, they would be entitled to share; and yet, with such knowledge, and notwithstanding frequent interchange of visits between the executrix and one of the plaintiffs, neither she nor her coplaintiffs made any inquiry or effort to ascertain what disposition had been made by the deceased of his estate.

APPEAL from a judgment of the Superior Court of San Diego County. T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

A. Lincoln Walker, Ansel Smith, and Luce & Luce, for Appellants.

Sam Ferry Smith, for Respondents.

SHAW, J.—This is an appeal from a judgment entered upon an order of the court sustaining defendants' demurrer interposed to the first and second counts of the fourth amended complaint, filed by the plaintiffs on August 15, 1911; and from a judgment of nonsuit upon a trial had as to the cause of action stated in the third count thereof.

This third count of the complaint stated in the usual form a cause of action for the quieting of plaintiffs' title to certain real estate. The averments therein being denied by defendants' answer, a trial was had and evidence introduced by plaintiffs, at the close of which the court granted defendants' motion for a nonsuit upon the ground that plaintiffs had failed to prove the allegations of their complaint. The evidence so introduced and upon which the court acted is not brought up in the transcript; hence there is no record pre-

sented upon which it can be said the ruling was error. For this reason the judgment of nonsuit upon the third cause of action in the complaint set forth must be affirmed.

As appears from the complaint, the second count thereof is equitable in its nature and purports to state a cause of action upon which plaintiffs ask the court to set aside and annul an order of the court sitting in probate, whereby it admitted to probate the last will and testament of John Leatham, deceased, the grounds therefor being: 1. That the court had no jurisdiction to make the order complained of; and, 2. That, conceding jurisdiction vested in the court so to do, the same was procured by extrinsic fraud.

The material facts necessary in considering the propositions are as follows: John Leatham died on January 31, 1906, leaving the defendant Helen L. Leatham as his widow, and his children (the plaintiffs herein) by a former marriage, from the mother of whom he was divorced in 1886. The defendants Ivy Walsh and Walter E. Walsh were not related to John Leatham, deceased. At the time of Leatham's death and down to the filing of the complaint herein, plaintiff Melissa L. Nicholson was a resident of Los Angeles, in the state of California, Jennie Leatham Hickox a resident of St. George, Canada, and William Leatham, a resident of Benton Harbor, Michigan, which facts and the fact that they were all children and heirs of John Leatham, deceased, are alleged to have been, at the time when the proceedings for the probate of the will were had, well known to defendant Helen L. Leatham. On October 14, 1905, John Leatham, who was a resident of the city of San Diego, California, executed in due form a will whereby, without referring to them as his children, he gave to plaintiffs herein, other than William Leatham, to whom no reference was made, the sum of one dollar each. All the rest, residue, and remainder of his estate he devised and bequeathed to his wife, Helen L. Leatham, defendant herein, whom he named as executrix of said will. Following his death, Helen L. Leatham, the executrix named in said will, presented her petition to the superior court of San Diego County, praying for the probate of the will as the last will and testament of her deceased husband. A hearing thereon was had on March 5, 1906, and the same was, by order of the court, admitted to probate. Plaintiffs allege that at the time of the making of said will John Leatham was, by

reason of his age and sickness, weakened in body and mind, and that defendants, taking advantage of his condition, conspired to and did by means of fraud, menace, and undue influence, induce him to make the will, which he would not have made in the absence of such menace and undue influence so exerted upon him; that at the time of his death he was the owner of real estate situated in the state of California, of the value of upwards of two hundred thousand dollars. Under the allegations of the complaint we must assume as true that he left the large estate as alleged and that the will was obtained, as stated, by means of fraud and undue influence; that plaintiffs were his children and heirs; that one of them, Melissa L. Nicholson, resided in this state; that the fact of plaintiffs being children and heirs of her deceased husband, and their names and residences, were at the time of presenting her petition for the probate of the will, known to her. Notwithstanding the possession of such knowledge, it is alleged that, contrary to section 1300 of the Code of Civil Procedure, she, in filing the petition for the probate of the will, stated therein that, so far as known to her, she and Ivy Walsh were the only heirs of said decedent; and in said petition did not mention or state the names and residences of plaintiffs as heirs of deceased; that by reason of such omission, copies of the notice of the time appointed for the probate of the will, which was duly published under and in accordance with the provisions of section 1303 of the Code of Civil Procedure, were not at any time addressed to these plaintiffs, and particularly to the plaintiff Melissa Leatham Nicholson, who at the time was known by the petitioner to be an heir of the deceased and residing at Los Angeles in this state. It is further alleged, "that plaintiffs herein did not know or learn of any disposition of the property of said John Leatham, by . . . will . . . nor that they had not been provided for as children in said pretended will, and that such omission was not intentional, . . . prior to the month of December, 1910, when they obtained such information through their attorney, A. Lincoln Walker, employed to act for them one month before such December, 1910."

As to the first proposition, the contention of appellants is that the courts of this state do not acquire jurisdiction to make an order admitting a will to probate upon a petition in due form filed and hearing had thereon upon proof of publi-

cation of notice as required by section 1303 of the Code of Civil Procedure, from which petition is omitted the names and residences of the heirs of the testator, *if such names and residences be known to the petitioner*, and that, in the absence of a copy of the published notice being addressed to such *known resident* heirs, as provided in section 1303, an order made upon such petition admitting a will to probate may be set aside and vacated in a court of equity regardless of lapse of time.

In our opinion, the provisions of section 1300 of the Code of Civil Procedure, as to what the petition for the probate of a will shall contain, other than subdivision 1 thereof requiring a statement of the jurisdictional facts, are, in so far as noncompliance therewith affects the jurisdiction of the court, directory. Any one interested in the estate (Code Civ. Proc., sec. 1299), though not interested in upholding the will (*Estate of Edwards,* 154 Cal. 91, [97 Pac. 23]), may present the petition, and the petitioner may or may not have any knowledge or information as to the names and residences of heirs. In the absence of a statement contained in the petition giving the names and residences of heirs known to the petitioner, the court is as fully empowered to make the order upon due publication of the notice required by section 1303 of the Code of Civil Procedure, as though the petition was presented by a creditor of the estate having no interest in upholding the will and to whom the names and residences of heirs were in fact unknown. In such case, according to appellants' contention, the want of knowledge by the petitioner confers jurisdiction, whereas the suppression of that which is known by the petitioner deprives the court of jurisdiction. Thus, the jurisdiction of the court to make an order admitting a will to probate is made to depend upon the extent or degree of knowledge possessed by the person filing the petition for the probate of the will. Clearly such was not the intent of the legislature; indeed, section 1300 of the Code of Civil Procedure provides that even defects in the statement of jurisdictional facts *actually existing* shall not affect the validity of an order admitting a will to probate. The probate of wills and the administration of estates of deceased persons are in the nature of proceedings *in rem,* as to which jurisdiction may be obtained by publication of notice. To sustain appellants' contention and hold that jurisdiction to

make such an order depends upon a correct and truthful statement of petitioner's knowledge as to the names and residences of existing heirs, (a fact which appellants claim is not finally adjudicated by the probate court, but can be raised by another action in another court at any subsequent time), would lead to most embarrassing and intolerable results, The petition filed and upon which the order was made after due publication of the notice required by section 1303 of the Code of Civil Procedure, stated the jurisdictional facts required by subdivision 1 of section 1300 of the Code of Civil Procedure. The omission from the petition of a statement of the names, ages, and residences of the heirs, legatees, and devisees of the decedent, even if known to the petitioner, as alleged, could not operate to render the order void for want of jurisdiction, any more than omitting from the petition a statement as to the probable value and character of the estate. Of course, every opportunity should be given to persons interested in the succession to appear and contest the will, and where the heir and his place of residence is known, the petition should show that fact.

Where the names and residences of heirs are shown in the petition, thus appearing as a matter of record, the court, as a prerequisite to the making of the order, should require proof that copies of the published notice have been mailed to them as required by section 1304 of the Code of Civil Procedure. Where, however, the petition is silent as to the names and residences of heirs, they must be deemed by the clerk to be unknown to the petitioner, and hence he is not required to mail copies of the published notice; nor is any further proof than that of the publication of the notice necessary as a prerequisite to the making of the order. Since it appeared from the petition that the names and residences of heirs were unknown to the petitioner, no duty devolved upon the clerk to mail copies of the published notice to anyone, and the validity of the order made was unaffected by his failure so to do.

In the case of *In re Charlebois*, 6 Mont. 373, [12 Pac. 775], cited by appellants, an order of court admitting a will to probate was vacated for the reason that the notice required to be published of the time and place of the hearing was for two weeks only, when the statute required that it be published for three weeks. *Wright* v. *Simpson*, 200 Ill. 56,

[65 N. E. 628], like the Charlebois case, was based upon a
failure to publish the statutory notice. In both of these
cases the court very properly held that lapse of time could
not validate the judgment, which, being dead at its birth,
could be attacked anywhere or in any form of proceeding.
Undoubtedly such is the law. In the case of *Floto* v. *Floto,*
213 Ill. 438, [72 N. E. 1092], the facts as stated were almost
identical with those in the case at bar, and while the deci-
sion supports appellants' contention, it appears to have been
based upon what was said in *Wright* v. *Simpson,* wherein the
order was made without process of any kind, which fact was
apparently overlooked by the court.

It is next insisted that, conceding the court had jurisdiction
to make the order, Helen L. Leatham, executrix, and her co-
defendants, as shown by the facts pleaded, were guilty of acts
of omission and commission the purpose of which was, not
only to prevent appellants from appearing at the hearing of
the proceedings for the probate of the will, but intended to
prevent them from making investigation or inquiry as to the
disposition of the property made by their deceased father,
and that by reason thereof they were, for a period of nearly
six years, prevented from asserting their right to share in the
property so left by deceased. In the case of *Bacon* v. *Bacon,*
150 Cal. 477, [89 Pac. 317], the supreme court, after saying
that "a bill in equity will not lie to set aside a judgment ob-
tained by means of perjured testimony or forged documents,
introduced in evidence in support of a contested issue of
fact," quotes from *United States* v. *Throckmorton,* 98 U. S.
65, [25 L. Ed. 93], as follows: "But there is an admitted ex-
ception to this general rule, in cases where, by reason of some-
thing done by the successful party to the suit, there was, in
fact, *no adversary trial or decision of the issue in the case.*
Where the unsuccessful party has been *prevented from ex-
hibiting fully his case,* by fraud or deception practiced upon
him by his opponent, as by keeping him away from court; a
false promise of a compromise or where the defendant had
never had knowledge of the suit, being kept in ignorance by
the acts of the plaintiff; . . . and *similar cases which show
that there never has been a real contest at the trial or hearing
of the case,* are reasons for which a new suit may be sustained,
to set aside the former judgment or decree and open the case
for a new and fair hearing." Further discussing the propo-

sition, the supreme court of California says: "The gravamen of the rule thus expressed lies in the fact that the unsuccessful party has been prevented from exhibiting fully his case, and, consequently, that there has been no adversary trial or decision of the issue, no real contest at the trial, or, as stated in *Pico* v. *Cohn*, (91 Cal. 129, 135, [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970; 27 Pac. 537]), no fair submission of the controversy." In the *Broderick Will Case*, 21 Wall. (U. S.) 503, [22 L. Ed. 599], it is said: "A court of equity has not jurisdiction to avoid a will or to set aside the probate thereof, on the ground of fraud, mistake, or forgery, this being within the exclusive jurisdiction of the courts of probate; and also that a court of equity will not give relief by charging the executor of a will or a legatee with a trust in favor of a third person, alleged to be defrauded by the forged or fraudulent will, where the court of probate could afford relief by refusing probate of the will in whole or in part." The probate court is vested with exclusive jurisdiction over the probate of wills (*Tracy* v. *Muir*, 151 Cal. 363, 371, [121 Am. St. Rep. 117, 90 Pac. 832]; *Langdon* v. *Blackburn*, 109 Cal. 19, 26, [41 Pac. 814]), and, as we take it, the rule is absolute, save in cases where there has been a breach of duty arising from a fiduciary relation on the part of those securing the probate of the will, that the acts alleged to constitute extrinsic fraud must be such as operate to prevent the heir from appearing in the probate court and there contesting the will and exhibiting fully his case against its being admitted to probate. Otherwise a court of equity is without jurisdiction to afford relief.

Construing the complaint most strongly against the pleader, do the facts stated show any breach of duty arising from a fiduciary relation existing between Helen L. Leatham, the executrix, who secured the order admitting the will to probate, and these appellants, who, as appears, were all adults having their own separate homes? As to the natural relation existing, the complaint alleges that plaintiffs have "no certain knowledge of the marriage of . . . Helen L. Leatham to the said John Leatham, but have always supposed and been informed that said Helen L. Leatham was the step-mother of Melissa Leatham Nicholson." Conceding that this is a sufficient allegation that the executrix was the step-mother of Melissa, such fact, under the circumstances, created no rela-

tion of trust and confidence out of which any special duty was imposed upon Helen L. (*Mulcahey* v. *Dow,* 131 Cal. 73, [63 Pac. 158]). And since, as executrix, she represented the legatees and devisees, rather than the heirs, she owed the latter, as heirs, no special duty to look after or care for their interest. (*Goodrich* v. *Ferris,* 145 Fed. 844.)

It is strongly urged that the acts of defendants were designedly of a character not only to prevent, but that they did prevent the plaintiffs from initiating a contest of the will until the time therefor had expired, thus enabling defendants to procure its final probate by collateral fraud. Bearing in mind that plaintiffs, under the statute, had one year from the making of the order within which to appear and enter a contest of the will, we must, at the risk of some repetition, refer to the facts upon which this contention is based, all of which are facts affecting Melissa Leatham Nicholson alone. The statement of such facts is not only meager but the allegations thereof are evasive and ambiguous. As stated, John Leatham died at San Diego on January 31, 1906, knowledge of which fact at the time, since it is not denied, must be deemed admitted by plaintiffs, who, knowing of his death, also knew they were his children and as such, in the absence of a will, entitled as heirs to share in an estate consisting of real and personal property of a value of more than two hundred thousand dollars. With this knowledge, they must be charged with notice that the world moves on; and claiming an interest in the property of deceased, they must be likewise charged with knowledge not only of their own *status* and rights as affected by the death of their father, but as well of the *status* of the property left by him. Yet with this knowledge, and notwithstanding frequent interchange of visits between Helen L. and Melissa, between January 31, 1906, the time of the death of John Leatham, and November, 1910, neither she nor her coplaintiffs made any inquiry or effort to ascertain what disposition their ancestor had made of the large estate of which, to their knowledge, he was possessed at the time of his death. It is alleged that "plaintiffs did not know or learn of any disposition of the property of John Leatham, by deed, will or otherwise, nor that they had not been provided for as children in said pretended will, *and that such omission was not intentional,* nor of the false statements and fraudulent scheme to keep them from obtaining the property, theirs of

right as heirs, by the means of said false and fraudulent proceedings in the said superior court, prior to the month of December, 1910, when they obtained such information through their attorney, A. Lincoln Walker, employed to act for them one month before such December, 1910.'' To our minds, this allegation is entirely consistent with the fact that plaintiffs knew at the time that deceased had left a will, pretended or otherwise. Whether or not it disposed of his property depended upon its terms, validity, and due execution. They likewise knew that under its provisions, other than one dollar each, no property was left to them, but did not know until December, 1910, that *such omission was not intentional.* In other words, they knew deceased had left a will whereby each was made a legatee to the extent of one dollar only, but during a period of five years labored under the impression that the will was valid, until their attorney informed them of his discovery that it was the result of undue influence constituting fraud exerted upon the testator by defendants. The amended complaint is not verified, but had it been, such fact could not justify charging the affiant with perjury based upon the claim that he had falsely sworn that he did not know that John Leatham had left what purported to be his last will and testament. Our conclusion in this regard is further borne out by the fact that it appears from the decree of distribution, made on October 7, 1907, one year and seven months after the making of the order, the legacies bequeathed to plaintiffs were theretofore paid them. It is also alleged that ''no notice or knowledge of any probate proceedings was ever sent to these plaintiffs or any of them, . . . nor did they know of said proceedings, nor were they or any of them represented therein, and were prevented from so appearing or being represented by the fraud, false representations and deception of the court on the part of the said Helen L. Leatham, executrix.'' Admitting there was no notice, other than the conceded publication thereof required by the statute, and that they did not know of the time set for the hearing, at which the order attacked was made, and that by reason of want of such notice they were not represented, such allegation does not negative the fact that, during the whole of the year following the making of the order, they had full knowledge of the proceedings taken at the hearing, and during which year their right to enter a contest continued. ''In the absence of

positive averment to the contrary, it must be presumed that plaintiff had actual knowledge of the order admitting the will to probate made nearly a year after its offer for probate, either at the time it was made, or very shortly thereafter and within time for contest." (*Tracy* v. *Muir*, 151 Cal. 363, [121 Am. St. Rep. 117, 90 Pac. 832].) It further appears that after the death of John Leatham the relations between Melissa and defendants were cordial and friendly, and that they frequently visited each other, and on occasions before and after the making of the order admitting the will to probate and the making of the decree of distribution, they told her that she and her children would be amply provided for and her interest carefully looked after; that in May, 1906, Helen L. told Melissa that she (Melissa) had been abundantly provided for by John Leatham and should not worry about her financial condition; all of which is consistent with another allegation that Helen L. claimed to John Leatham in his lifetime that he had already advanced to Melissa her full share of his estate. What is said by the supreme court in *Del Campo* v. *Camarillo*, 154 Cal. 647, 660, [98 Pac. 1049], wherein the facts were similar to those in the case at bar, is pertinent: "Both before and since the mother's death the plaintiffs and defendants have frequently met in friendly relations. It does not appear that either of the plaintiffs, or any one of said firm of attorneys, has ever asked the defendants to explain the alleged statements of the mother to plaintiffs that all her property was to go equally to all the heirs. Due diligence required that such inquiry should have been made, and also that they should inquire of each other." So here, with the knowledge possessed by plaintiffs, due diligence required that they should make some inquiry and investigation as to what disposition their father had made of his property. See, also, as bearing upon the question generally, the following cases: *Shain* v. *Sresovich*, 104 Cal. 402, 405, [38 Pac. 51]; *Mulcahey* v. *Dow*, 131 Cal. 73, [63 Pac. 158]; *Estate of Davis*, 136 Cal. 590, 595, [69 Pac. 412]; *Estate of Twombley*, 120 Cal. 350, [52 Pac. 815]; *Goodrich* v. *Ferris*, 145 Fed. 844.

Since we are of the opinion that the complaint fails to state facts constituting any ground which would warrant a court of equity in setting aside the order admitting the will to probate, it must necessarily follow that the decree of distribution, made in accordance with the provisions of the will and under

which the property of deceased was distributed, must likewise be upheld. (*Estate of Davis,* 136 Cal. 590, [69 Pac. 412]; *Tracy* v. *Muir,* 151 Cal. 363, [121 Am. St. Rep. 117, 90 Pac. 832].)

This brings us to a consideration of the first count of the complaint whereby it is sought to have certain conveyances of real estate made to Helen L. Leatham by John Leatham, set aside and annulled upon the ground that they were procured by fraud and undue influence. Except as to three legacies of one dollar each, all the property of John Leatham was, under the terms of the will, bequeathed and devised to his wife Helen L. Leatham, to whom it was by decree entered in accordance with the provisions of the will, distributed. Hence, if the conveyances were set aside and the property held to belong to the estate of John Leatham, deceased, Helen L., as sole residuary legatee, would succeed to the title thereto under the decree of distribution. Therefore, no purpose could be subserved in considering or deciding the question. In no event, under our view of the case, have the plaintiffs any interest in the question.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 16, 1915, and the following opinion then rendered thereon:

ANGELLOTTI, C. J.—The application for a hearing in this court after decision by the district court of appeal of the second district is denied. In denying such application we deem it proper to say that in so far as anything said in the opinion may be supposed to imply that a *fiduciary* relation on the part of those securing the probate of a will is essential to the making of a sufficient case of extrinsic fraud to sustain an action for a decree in equity charging the executor, legatee, or devisee with a trust in favor of the defrauded party (see *Bacon* v. *Bacon,* 150 Cal. 481, [89 Pac. 317]; *Sohler* v. *Sohler,* 135 Cal. 323, [87 Am. St. Rep. 98, 67 Pac. 282]), it is not in accord with our view of the law. No such distinction is warranted by the authorities. Such a doctrine is not at all

essential to the conclusion reached by the district court of appeal, and the opinion filed sufficiently disposes of the case without reference to any such doctrine, and on the theory that the parties must be deemed to have had notice of the proceedings in time to have enabled them to assail the will, and that they did not use due diligence in regard thereto. It may be that no such implication as suggested was intended by the learned author of the opinion, but we feel that some language used may be thought by some to be susceptible of that construction.

Shaw, J., Sloss, J., Lorigan, J., and Melvin, J., concurred.