In the MATTER OF THE ESTATE OF JOHN REHARD, Deceased.

**Wills:** MENTAL CAPACITY: EVIDENCE: INSTRUCTION. The testimony 1 of witnesses, who were acquainted with a testator and transacted business with him, that they observed nothing in his conduct or conversation indicating mental weakness was as much affirmative evidence as that of witnesses testifying to his mental incapacity; and a requested instruction that negative evidence is of a lower character than affirmative evidence was inapplicable and properly refused.

**Same:** WITNESSES: DISQUALIFICATION: INTEREST. The provision of 2 a will that one of the witnesses should be employed by the executor as his attorney did not create such a definite legal interest in the estate as would disqualify him as a witness, although it might have some bearing on the weight to be given his evidence.

**Same:** EVIDENCE: HYPOTHETICAL QUESTIONS: PREJUDICE. The jury 3 should not be permitted to determine the materiality of facts embodied in a hypothetical question; but where all of the facts recited in a question asked by the proponent of a will were material and practically undisputed, the contestant would not be prejudiced by an instruction permitting the jury to pass upon the materiality of the facts, even if it erroneously deemed some of the facts immaterial, unless it also found such facts to be untrue.

*Appeal from Madison District Court.*—HON. LORIN N. HAYS, Judge.

Saturday, November 22, 1913.

This action involves a contest of the will of John Rehard, deceased. The contest was instituted in resistance to the probate of the will. At the time of the execution of the will the testator was about eighty-six years of age. The only grounds of contest upon which testimony was offered was the alleged mental incompetency of the testator to make the will. There had been four children of the testator, viz., John Rehard, L. H. Rehard, Regan Rehard, and Mrs. Egy. Only two of these survived the testator, John and Regan Rehard having previously died. John Rehard, the son, left a family. The property which was devised to John in a previous will was devised to his family in the present will. Substantial provision was made in the will for both the surviving children and for the family of John. The alleged inequality in the provisions of the will is that a larger provision was made for the daughter than for the other beneficiaries. The contest was instituted by Ersie, a son of John Rehard, the deceased son of the testator. There was a trial to a jury, and verdict sustaining the will. It was accordingly admitted to probate, and the contestant appeals.—*Affirmed*.

*Robbins & Nicholson*, for appellant.

*A. W. & Phil R. Wilkinson* and *W. S. Cooper*, for appellees.

Evans, J.—I.   One ground of complaint here is that the verdict was not sustained by sufficient evidence. In response to this assignment of error we have read the entire record. The complaint at this point is not justified by the record. The testimony in the record in support of the mental competency of the testator is overwhelming, while the testimony to the contrary on behalf of the contestant is quite meager.

II.   The contestant asked the trial court to instruct the

jury that "negative evidence is of a lower character than affirmative evidence." This was refused, and error is assigned upon such refusal. The alleged pertinency of such request is based upon the fact that a large number of witnesses for the proponent who were acquainted with the testator testified to business transactions and conversations with him, and testified also that they observed nothing in his conduct or conversation indicating mental weakness; whereas, witnesses for the contestant testified also to conversations and transactions with the testator from which they expressed opinion of the mental unsoundness of the testator. The theory of the appellant is that the testimony of his witnesses was affirmative, while that of the proponents' witnesses was negative. Whatever may be said as to the abstract correctness of the rule contended for (*In re Wharton*, 132 Iowa, 717), it was inappropriate to the case before us. The opinion of a witness sustaining the mental competency of the testator based upon actual observance may be no less affirmative in its essence than is that of the witness who testifies adversely to such mental competency. The instruction was properly refused.

*1. Wills: mental capacity: evidence: instruction.*

III. One of the witnesses to the will was A. W. Wilkinson, the attorney who drew the same. The will contained a provision nominating E. E. Orris as executor. It also directed that in the settlement of the estate "he shall employ as his attorney A. W. Wilkinson." Objection was made to the competency of Wilkinson as a witness to the will on the ground that he was a party in interest under its provisions. This objection was overruled. We think the ruling was correct. The alleged interest of Wilkinson was indirect and uncertain. It conferred no legal right upon him whatever. The provision was not binding upon the executor nor upon the court in the administration of the estate. The interest which would render a witness incompetent must be of a definite and legal nature. *Hawkins v. Hawkins*, 54 Iowa, 443; *Quinn v. Shields*, 62

*2. Same: witnesses: disqualification: interest.*

Iowa, 129; *Bates v. Officer,* 70 Iowa, 343. The interest shown here is remote, indirect, and uncertain. It could doubtless be shown as bearing upon the weight of the testimony of the witness; but his competency was not affected thereby. There is the further consideration that by the provisions of Code, section 3275, a subscribing witness to a will is prohibited from deriving any benefit therefrom. The apparent purpose of this statute is to save the competency of a witness to a will even at the expense of the benefit which he might otherwise receive thereunder.

IV.    Complaint is made of instruction No. 13 given by the trial court, which is as follows: ''The opinion of medical witnesses has been allowed in evidence based upon certain

3. SAME: evidence: hypothetical questions: prejudice.

hypothetical questions; that is to say, upon an assumed state of facts. This kind of evidence is called expert evidence, and when it is mere theory it is not a high order of testimony, and to be of any value all the material facts embraced in the question must have been established by the evidence. If such question contains a material statement not proven, or omits material facts established by the proof, then and in such case such evidence would be of no value in reaching your verdict.''

It is alleged that this instruction was erroneous on the ground that it permitted the jury to determine the materiality of facts included in the hypothetical question. This instruction is doubtless technically erroneous. The question involved has been considered in a number of our previous cases. *Hall v. Rankin,* 87 Iowa, 264; *Kirsher v. Kirsher,* 120 Iowa, 337; *Stutsman v. Sharplus,* 125 Iowa, 337; *Ball v. Skinner,* 134 Iowa, 298; *Stanley v. Taylor,* 160 Iowa, 427. An examination of the record in this case, however, satisfies us that the error was wholly technical, and could not have been prejudicial to the appellant.

The following hypothetical questions were put to Dr. Hill by the proponent:

Assuming, Dr. Hill, that John Rehard died the 2d day of January, 1912, at which time he was about 86 years of age; that he had been a farmer all his life, but retired from his farm in 1902, after which time he looked after collecting rents from over three hundred acres of farm lands, and the loaning and collecting of about $18,000 to $20,000 in money, and collecting interest thereon; that from 1904 he had occasional attacks of dysentery or bowel trouble, which would weaken him physically, from which he would recover in a few days; about eight years ago he was examined by a physician, when it was found he had a hardening of the surface arteries of the wrist, hand, and temple, which condition of hardened arteries had made but little progress up until the fall of 1911, but he had become weaker physically; his memory had failed to some extent, and his heart had become a trifle weaker, and a few times he had swelling of the feet, and up to late in the fall of 1911 he had been able to look after his own business; that he had owned all his real estate for a good many years, and was well acquainted with it, its location, and value; that he had been a hard working, frugal, and saving man all his life; that the business men with whom he was acquainted and his physicians who had treated him occasionally could not notice any change in his mental condition—assuming these facts to be true, Doctor, would you say that there was anything—that there was mental, necessarily any mental, impairment in the month of April, 1911?

This was objected to as incompetent, irrelevant, and immaterial, and calling for a conclusion of the witness, and on the further ground that many of the facts were not shown by the testimony. The objection was overruled, and the witness gave the following answer:

My opinion is that there is nothing in the description made in the hypothetical question to show that the man described was not competent to do business at the date named in the question.

Assuming, Doctor, the same state of facts which I have detailed to be true, assuming that the decedent, John Rehard, formerly lived in the same community in which he lived in the same county, and that he saw the members of his family frequently, that in the month of April, 1911, he went to an

attorney's office by himself, taking with him a will which he
had prepared about that time, had drawn, and told the attor-
ney of the changes he desired made in it, assuming those facts
in addition to the other facts which I detailed to you, you
may now state to the jury whether or not you believe that,
in your opinion, the decedent, John Rehard, was at that time
of sound mind, so that he was capable of exercising judgment,
and discretion, and reason, and of transacting his business.

This question brought an affirmative opinion from the
witness that the testator was mentally competent.  Taking
the two questions and answers together, the opinion expressed
was manifestly based upon the absence of facts showing men-
tal incompetency.

It is not now claimed that this evidence was improperly
admitted.  There was evidence in support of every fact stated
in the hypothetical question.  The contestant offered no hypo-
thetical evidence in his own behalf.  The one question pre-
sented, therefore, is whether the contestant could have been
prejudiced by the error in instruction 13, whereby the court
impliedly permitted the jury to pass upon the materiality of
facts recited in the hypothetical questions put by the propo-
nent to her witnesses.  It is not claimed that such questions
contained the recital of any fact which was not material.  It
must be said, also, that every alleged fact recited was material
in a legal sense.  If it could be known that the jury properly
deemed such facts as material, there could have been no
prejudice to either party.  If the jury had erroneously
deemed some of such facts as immaterial this could not
prejudice the contestants, unless the jury had also failed
to find such facts to be true.  The facts detailed in the hypo-
thetical questions, however, were practically undisputed.  The
only exception to this statement was the fact that men with
whom the testator was acquainted "could not notice any
change in his mental condition."  Upon that question the tes-
timony of the respective sides was in conflict.  If the finding
of the jury at that point had been with the contestant, the

verdict must have been in his favor. The greater part of the evidence was directed to this question. It was principally nonexpert. So that upon this record the evidence of proponents' expert witnesses was entitled to consideration by the jury so far as the form of the hypothetical question was concerned. If the jury considered such evidence, neither party was prejudiced. If it failed to consider it, only the proponent was prejudiced. As already indicated, the contestant offered no hypothetical evidence. So far, therefore, as instruction 13 permitted the exclusion of the hypothetical evidence on improper grounds, the contestant could not be hurt thereby.

V. Some minor errors are assigned against rulings on the evidence. The trial court sustained objections to certain proffered testimony of witness L. H. Rehard. He is a son of the testator, and a beneficiary under the will. The rejected testimony in each case involved personal transactions or conversations between him and the testator. The rulings were made upon that ground, and were proper. Other errors assigned are not argued. We discover no prejudicial error in the record.

The judgment of the trial court must therefore be *Affirmed*.

WEAVER, C. J., and LADD and PRESTON, JJ., concur.