IN RE LANE'S ESTATE
HARRIS v. SCHOONMAKER, ET AL.

(No. 1949; June 9, 1936; 58 Pac. (2d) 415)

(Rehearing denied September 1, 1936, 60 Pac. (2d) 360)

For the appellant there was a brief and oral argument by *J. J. Spriggs* of Lander, Wyoming.

122

For the respondent, there was a brief and oral argument by *P. B. Coolidge* and *W. E. Hardin* of Lander.

RINER, Justice.

This is a proceeding by direct appeal to obtain the review of a judgment of the district court of Fremont County dismissing with prejudice the petition of Mary Harris filed in that court for the purpose of contesting the Last Will and Testament of Sarah N. Lane, deceased.

The facts necessary to be considered in disposing of the matter here are substantially these: A. D. Lane and his wife, Sarah N. Lane, many years ago came to the Lander Valley and he engaged in the mercantile business as a licensed Indian trader at Wind River Agency, Wyoming. A son, William N. Lane, was born to them August 12, 1871, who during the years 1884 to 1894, inclusive, attended school without Wyoming, vacationing with his parents during the summer months until about the last of August or the first of September of each year. He finally graduated in law at Cornell University and engaged in business in Milwaukee, Wisconsin. There he was married June 27, 1911. As the issue of that marriage there were born to him and his wife, Elizabeth Lane, two children, John S. Lane and William N. Lane, both being minors, John aged twenty years and William seventeen years, at the time the hearing of the will contest was had in December, 1934. July 26, 1920, while traveling from Milwaukee to Lander, the father of these children was killed in a railroad accident. Their grandfather, A. D. Lane, died April 17, 1930. Their mother thereafter, on February 2, 1931, was married to Charles Baerwald of Milwaukee, Wisconsin.

July 31, 1931, Sarah N. Lane, being then about eighty or eighty-one years old, executed the will in question, which was witnessed by E. E. Coon and P. B. Coolidge, both residing in Lander, Wyoming. By that will, after directing that her debts and funeral expenses be paid, the testatrix bequeathed to Charles E.

Lane, a brother of her deceased husband and a resident of East Rochester, New York, the sum of $4000.00, and to her daughter-in-law, Elizabeth Lane, a legacy of $5000.00. Certain real and personal property in Lander, Wyoming, was by the will devised and bequeathed to Elizabeth Lane and her children, the two grandsons of the testatrix, John S. Lane and William N. Lane, an undivided one-third interest to each to be distributed to them in kind, their several interests not to be transferred in any way until the grandson William N. Lane attained the age of twenty-one years. The residue of her estate the testatrix devised and bequeathed to Gwynne F. Schoonmaker of Lander, Wyoming, as trustee, to be managed and disposed of by him under certain detailed trust provisions, among which may be mentioned that the trustee was to use all or a portion of the income from the trust estate, as he should deem advisable, for the maintenance and education of both the grandsons of the testatrix aforesaid, until John attained the age of twenty-one years, when he should be paid $10,000.00 from the estate, a similar amount to be paid William when he became twenty-one, at which time also his brother should receive $15,000.00; a like sum as that last mentioned was required to be paid to William when he became twenty-five years old, and upon their attaining the age of thirty years, each grandson should then be entitled to receive one-half of the estate remaining in the hands of the trustee and the trust should thereupon be closed. The trustee, who was also nominated in the will as the executor thereof, was given broad powers by it in the management and disposal of the estate and the property thereof, without the necessity of obtaining the consent, approval or confirmation in such transactions by any court, and without reports concerning the same, he being also excused in the will from giving bond either as executor or as trustee.

The attestation clause subscribed by the witnesses to the will was in the usual form required by law, but it additionally stated that they believed the said Sarah N. Lane to be at the time of subscribing their names as witnesses "of sound and disposing mind and memory," and also that, "we further certify that the said instrument was, word for word, carefully and distinctly read over to the said Sarah N. Lane, by each of us before she executed the same, she being blind, and that she fully understood each and every provision thereof."

Sarah N. Lane died May 7, 1933, and on the 12th of that month a petition for the probate of the will aforesaid was filed by Gwynne F. Schoonmaker in the district court of Fremont County, and notice of proving the will was duly published. On June 26, 1933, the court took the testimony of the subscribing witnesses and also that of the proponent of the will, found the fact of her death as a resident of Fremont County, Wyoming, the value of the estate, that the instrument submitted was the Last Will of Sarah N. Lane, that it was executed as required by law at a time when the testatrix was of sound and disposing mind and not acting under duress, menace, fraud or undue influence, and ordered that the instrument be admitted to probate as the will of Sarah N. Lane. Gwynne F. Schoonmaker was appointed executor to serve without bond, as directed by the will. He immediately qualified and assumed the duties of executor.

On October 24, 1933, and within the time fixed by Section 88-701, W. R. S. 1931, Mary Harris filed her petition to contest the will aforesaid, alleging herself to be a daughter of William Lane, the only son of the testatrix, and a granddaughter of the latter. Summarized the petition charged that the will was invalid because "not legally witnessed and attested as required

by law"; that the testatrix at the time the will was executed was incompetent to do so and was "acting under undue influence, duress, fraud, mistake of facts, misapprehension of facts and lack of understanding and comprehension." Elaborating these averments the petition alleged:

"That at the time of the execution of said will, the said Sarah N. Lane, deceased, was not of sound mind, was not of deposing memory, did not understand the legal effect of said purported will; did not understand the relation she bore to those dependent upon her, or those entitled by reason of the blood relationship, and lineal decendency, to share in her estate, and to have her make provision for them, and especially this contestant, the only granddaughter of said deceased testatrix; and that said deceased testatrix never intended to make said purported and unnatural will, and deprive this contestant of a share in the estate of said deceased; and she never read said will and did not understand what she was signing when she signed said purported will.

"That said purported will was not signed by said testatrix in the knowledge of what she was signing; that the witnesses did not sign the same in her presence; that the said testatrix never asked said witnesses to sign said purported will; that said testatrix never declared the said purported will to be her last will and testament; that the testatrix at the time of the execution of said purported will, never intended it to be her last will; and the said purported will was not the last will of said testatrix."

The petition is quite long, but the foregoing outline thereof indicates, we think, its purport so far as it undertakes to attack the validity of the will. It also questions the validity of the court's previous order admitting the will to probate, as above recited, because the petition to probate did not list the contestant, Mary Harris, as an heir of the decedent, Sarah N. Lane, and no copy of the notice of the time for probating the will was sent her. The contestees filed answers, which were

in substance general denials, admitting, however, the probate of the will, the appointment of Gwynne F. Schoonmaker as executor thereof, that P. B. Coolidge was one of the witnesses of the will, that the testatrix at the date of the execution of her will was blind and that she was a resident of Fremont County at the time of her death, leaving an estate consisting of real and personal property there. There was a reply by contestant denying any new matter in the answers.

The issues were tried before a jury, with the result that upon the conclusion of the evidence in the matter the court instructed the jury to find in favor of the contestees and against the contestant on the issues involving the competency of Sarah N. Lane to make the will in question, its due and proper execution, her freedom from duress, menace, fraud or undue influence in the making and execution of said will and as to whether due notice was given to all known heirs of the time and place of the probate of said will. The jury made its findings accordingly, and judgment was entered pursuant to those findings. Contestant's petition was therefore finally dismissed by said judgment, as already stated.

A large amount of testimony was taken relative to the question whether the contestant was an heir of Sarah N. Lane and hence an interested party entitled to contest the probate of the will, as provided by Section 88-701, supra. The question, "Who was the father of contestant, Mary Harris?" was submitted to the jury, and was answered, "Undetermined." Other questions interrogating the jury as to whether a marriage in fact existed between the mother of the contestant and William N. Lane, were answered in the negative. Under the view we take of the record, after careful study of it, in the light of the contentions made by the parties here, it will be unnecessary for us in disposing

of the case to consider that phase of it. We may remark as well that our conclusion would remain unaltered were we to assume that contestant had clearly and conclusively proved and the jury had found that she was an heir of Sarah N. Lane, in consequence of being the daughter of William N. Lane, the son of the testatrix.

Contestant asserts that the court erred in instructing a verdict as hereinbefore described, and this requires a consideration of the evidence bearing on the several issues involved. Concerning the execution of the will, the competency of the testatrix to act in the matter and her freedom from undue influence, E. E. Coon, one of the subscribing witnesses, testified in substance that Mrs. Lane signed the instrument July 31, 1931, in the presence of Gwynne F. Schoonmaker, P. B. Coolidge and himself in her home in Lander before noon of that day; that he first read the will to Mrs. Lane, in the presence of the others, then Mr. Coolidge read it to her, talked to her about it, and she thereupon signed it and said she wanted him and Mr. Coolidge to witness the will; that she stated it was her last will and testament; that after she signed it, both he and Mr. Coolidge signed the will as witnesses; that he asked her before she signed the will if it suited her, and she said it did; that she talked with him a great many times after the execution of the will and expressed her absolute satisfaction with it; that she explained to him the reasons why she had directed that the several legacies and trustee provisions be placed therein; that she knew very well to whom she wanted her property to go; that her mind and mentality were good so far as he could see at the time she signed the will; that neither at that time nor at any other time, in his presence, did any one say anything that indicated influence brought to bear respecting the will's provisions; that she was blind, but that she could al-

ways understand him when he talked to her in his natural tone of voice. On cross-examination he testified that she had absolute confidence, as she said, in Mr. Schoonmaker, the executor; that she had a wonderfully keen mind.

The other subscribing witness, P. B. Coolidge, was the lawyer who had drafted the will, and his testimony on the matters concerning which Mr. Coon testified as above was in outline thus: That he, Coon and Schoonmaker went to Mrs. Lane's home the middle of the forenoon of July 31, 1931, he having previously prepared the form of will under her instructions and directions; that there was an existing will made by her the previous November, and he had been called for to come to the house to re-draft that instrument; that he and Mr. Schoonmaker went to her house and Mrs. Lane then directed him relative to certain changes that she wanted made in the earlier will, and he at the time carefully made notations of the exact changes the testatrix desired; that the whole thing was talked over and then he re-drafted the instrument exactly as she wanted it; that when the will as altered to meet her wishes was brought to her for her signature on July 31, 1931, it was read in a very distinct tone of voice to Mrs. Lane first by Mr. Coon, and as it progressed several matters were talked over; when he concluded the reading, Coon asked Mrs. Lane if it was exactly as she wanted it, and she said it was; that this witness then again read the will to her, reading it very distinctly, and after the reading had been completed, asked her about the same question as Mr. Coon did relative to her satisfaction with the will, whereupon she stated it was exactly as she desired it and that she understood its provisions; that she asked Mr. Coon and this witness to sign as witnesses of the will, and first she signed it and said, "This is my last will and testament."; that he and Coon proceeded in her pres-

ence and in the presence of each other to sign the will. After explaining the reasons Mrs. Lane gave him for inserting the several clauses in the instrument concerning the legacies and trusteeship, this witness testified further that Mrs. Lane had splendid mental capacity, was of sound mind, had a splendid memory and one of the brightest minds he had known in Lander since 1905, when he came there; that no one, to the knowledge of the witness, attempted to use any undue influence upon her as to furnishing the data for the will or in the execution of the document itself; that Mrs. Lane herself determined the kind and character of the will she desired, having knowledge of the kind and character of her property and by whom she wanted it to be received; that she was blind, but he never had to repeat a question to her, and that her hearing was far above the average for a person at her age.

The testimony of Mr. Schoonmaker, who also was present when the will was signed, was of similar purport with that of the witnesses detailed above. He further stated that after Mrs. Lane's husband died she called him to her home to talk to her about her business affairs, and that from that time on until her death, in looking after her affairs he saw her the first of each month and many times in between; that she had a very keen, clear mind and a very good memory; that she frequently remembered the bank balances as he gave them to her each month and knew exactly what was going on in her household; that she could tell him at the end of the month exactly the items of her household expenses, which were listed and kept with her papers; that he did not in any way advise Mrs. Lane as to what was to go into the will.

Rev. John Roberts, an Episcopal minister, who had lived on the Indian Reservation near Lander since 1883

and had known Mrs. Lane, the testatrix since that time, testified that he called upon her several times during the years 1930 to 1933, the last being the year of her death; that he was the officiating clergyman at her husband's funeral; that her mind and memory were good; that she was of sound mind and her mental capacity was good. A number of the residents of Lander who had known Mrs. Lane for many years and who lived as neighbors to her, testified in detail to her alert mental faculties and her soundness of mind, as did also her housekeeper, who took care of her during the period September 8, 1930, to December, 1932. The latter stated that at times she was a "little hard of hearing, not unusually so for one of her age."

Two licensed physicians in regular practice at Lander attended Mrs. Lane at different times for her ailments, Dr. Holtz frequently from October 7, 1932, to March, 1933, Dr. Smith on June 28, July 7, July 30 and August 21, 1931, and February 9, 1932. These men both testified regarding their observations concerning her, the latter who it will be noted saw her only the day before the will was signed by the testatrix, stated that she was at all times mentally competent, of sound mind and decidedly knew what she was doing; that he never noticed any difficulty with her hearing, she having no trouble in understanding ordinary conversation; that she was blind and at the time he saw her she was about eighty or eighty-one years old. The testimony of the physician first mentioned was that her main trouble was a bronchial affliction, but that her mental faculties were quite normal; that she had a very good memory, could talk of things in the past very accurately, remembered dates quite well and kept up fairly well on things that were going on every day in Lander and the surrounding country; that she had a sound mind, and though blind, roughly

speaking, he would say she had a seven-tenths normal hearing.

Contestant has failed to direct our attention to any evidence which was of a character that required its submission to the jury as in conflict with that of the contestees above reviewed and as supporting the issues raised in contestant's petition which was dealt with in the court's instruction to the jury to find in favor of the contestees. The argument for contestant in this connection seems to be that because she was blind, was eighty-one years of age, did not have her completely normal hearing, had a physician call on her the day before the will was signed, the testatrix could not understand the terms of the will at a first reading. However, the uncontradicted evidence is that she did understand them as they were the result of her own previous directions and wishes. Testimony that she disliked her daughter-in-law, Mrs. Lane, afterwards Mrs. Baerwald, and the fact that she omitted contestant as one of the legatees in her will, is relied upon as demonstrating want of testamentary capacity in Mrs. Lane. We are quite at a loss to perceive any basis for such conclusion.

Special reliance appears to be placed by contestant upon the case of Meier v. Buchter, 197 Mo. 68, 94 S. W. 883, 6 L. R. A. (N. S.) 202. That case is as different from the one before us as the color black is from white. There an unmarried deaf and dumb daughter, who as his housekeeper had cared for her father for a number of years, was cut off by the latter with a very small legacy in his will. The testator a month before he executed the instrument had had a paralytic stroke, was in an extremely precarious physical condition, and there was evidence very clearly tending to show undue influence applied to him in the execution of his will by his other married children, who were made the chief beneficiaries under it.

In our examination of contestant's claims, it is proper to recall in this connection that it was pointed out in Wood v. Wood, 25 Wyo. 26, 164 Pac. 844, that the burden of showing an alleged incompetency of the party making the will rests upon the contestant "unless the case should be brought within the exception where previous incompetency is admitted or sufficiently shown to change the burden." Supplementing this is the pertinent language of the court in Cook v. Bolduc, 24 Wyo. 281, 157 Pac. 580, 158 Pac. 266, that case being also a will contest, where it was said:

"The question is not whether this will is such an one as a juror, the district court or this court is of the opinion the testator should have made under the circumstances; but was it the will of Josiah Cook at the time, and was it his desire that his property should be disposed of after his death as therein bequeathed and devised? Wills deliberately made by persons of sound mind are not to be lightly set aside. And the undue influence which will warrant doing so must be proven to be such as destroys the free agency and thereby substitutes the will of another for that of the testator."

What was said in the case last cited is in tacit recognition of the absolute right of the testator to dispose of his property after death as he sees fit, provided he is legally qualified so to do and acts as the law directs. As said in 28 R. C. L. 68, § 10:

"But subject to whatever restrictions may be imposed by statute, or by recognized rules of law, it would seem that the privilege of testamentary disposition may properly be designated as a right, and authority may be found for calling this privilege a sacred right, and one guaranteed by law. But it is more correct to say that by the grace of the law a man is allowed to control the disposition of property after his death and to do many other things by will. Within certain limits he is allowed to project his individuality, his grasp, and his desires, beyond the grave, and make them effective through his last will and testament. No

next of kin or relative, no matter how near they may be, can be said to have any legal or natural right to the estate of the testator which can be asserted against the legally executed will of the latter."

See also 68 C. J. 512, 513, § 130, 608, 609, § 231, and cases cited.

A thorough study of the record in this case leaves not the vestige of a doubt in our minds that the trial court properly instructed the jury to find for the contestees, as was done. The course thus taken was fully within the rule mentioned in Rosson v. Hylton, 45 Wyo. 540, 22 Pac. (2d) 195, and cited cases. That rule was stated in Calkins v. Wyoming Coal Mining Co., 25 Wyo. 409, 171 Pac. 265, thus: "When it clearly appears to the trial court that upon the evidence produced, giving to it its full probative force, together with all reasonable inferences deducible therefrom, it fails to establish in law a claim, or defense, it is not only the right but the duty of the court to so instruct the jury." We are constrained to say that if a contrary view of the evidence had been taken by the district court and the contestees had been obliged to bring this record here for review, we would have been compelled to order an unqualified reversal.

It is said that the court had no jurisdiction to admit the will to probate because the contestant was not named as an heir in the petition for probate of the instrument, as indicated in Section 88-211, W. R. S. 1931, and because a copy of the notice of the time and place for the probate of the will was not sent her as such heir, as directed by Section 88-215, W. R. S., 1931.

As is well known to the legal profession, much of our probate code is either identical with or is quite similar to that of the State of California relating to procedure in such matters.

It is said in Abels v. Frey, 126 Cal. App. 48, 14 Pac. (2d) 594, that:

"The jurisdiction of the probate court is a jurisdiction in rem, the res being the estate of the decedent which is to be administered and distributed with regard to the rights of creditors, devisees, legatees, and all the world. Warren v. Ellis, 39 Cal. App. 542, 179 P. 544; Nicholson v. Leatham, 28 Cal. App. 597, 153 P. 965, 155 P. 98. By giving the notice prescribed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate, and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appears and presents his claim, or fails to appear, the action of the court is equally conclusive upon him, ' "subject only to be (ing) reversed, set aside, or modified on appeal." ' The decree is as binding upon him if he fails to appear and present his claim, as if his claim, after presentation, had been disallowed by the court. William Hill Company v. Lawler, 116 Cal. 359, 48 P. 323; Mulcahey v. Dow, 131 Cal. 73, 63 P. 158; Hanley v. Hanley, supra."

So in Rice v. Tilton, 14 Wyo. 101, 82 Pac. 577, it is remarked that: "A proceeding for the probate of a will or for the grant of letters of administration is in the nature of a proceeding in rem, and is generally so regarded."

Under statutes closely resembling the two sections of our probate code last above cited, the Supreme Court of California in Murray v. Superior Court, 207 Calif. 381, 278 Pac. 1033, used the following language:

"It may also be assumed that it was the duty of the petitioners to set forth in the petition for the probate of the will the specific names and addresses of the legatees included within the class mentioned if such names and addresses were known to the petitioners, but a failure to perform that duty, if it existed, did not deprive the court of jurisdiction to try the contest.

Indeed it was said in Nicholson v. Leatham, 28 Cal. App. 597, 153 P. 965, 155 P. 98, that the omission from the petition of a statement of the names, ages, and residences of the heirs, legatees, and devisees of the decedent, even if known to the petitioner, could not operate to deprive the court of jurisdiction, and that when the petition is silent as to the names and residences of the heirs they must be deemed by the clerk to be unknown to the petitioner and he is not required to mail copies of the published notice. The probate of the will and the administration of the estate is in the nature of a proceeding in rem. King v. Chase, 159 Cal. 420, 425, 115 P. 207; 11 Cal. Jur. p. 236. The power to proceed therewith attaches upon the production of the will and the filing of the petition pursuant to section 1300 of the Code of Civil Procedure and the publication of the notice provided for in section 1303 of that Code. Nicholson v. Leatham, supra."

The ruling in the case just cited was also followed in that jurisdiction in the later case of Security-First National Bank of Los Angeles v. Superior Court, 1 Cal. (2d) 749; 37 Pac. (2d) 69. See also 1 Bancroft's Probate Practice 222, Section 122.

By Section 88-215, W. R. S. 1931, supra, it is to be noted that not only "must" copies of the notice of the time for the probate of the will be addressed to the heirs of the testator, but a copy of the same notice "must" be sent to the person named as executor of the will "if he be not the petitioner." In Rice v. Tilton, supra, one of the questions presented was "whether the failure to give the statutory notice to the executors named in the will of the hearing upon the application of defendant in error for the probate of the will, and his appointment as administrator with the will annexed, rendered such appointment void." Answering this question in the negative the court announced its conclusion thus:

"We think the order was not void, but merely voidable. The executors might have appeared and thereby

waived the irregularity as to notice. But the fact that notice was mailed or personally served is not required to be shown upon the record. That is a fact to be ascertained by the court, judge, or commissioner, from the proof made at the hearing, when the parties do not appear. Had the record shown nothing as to such service, it is clear that the presumption would follow that the necessary proof was made to authorize the hearing and the order of the court in the premises; and as the order recited that proof of notice was made, the contrary could not have been presumed or shown upon collateral attack. (In re Twombley's Estate (Cal.), 52 Pac. 815; In re Griffith, 84 Cal., 107, 23 Pac. 528.) The order was, therefore to all intents and purposes, until set aside, as valid and binding upon all persons as though there had been no irregularity in the matter of notice.

"This conclusion is in accord with authority upon the subject. It is generally held that an order by the proper court granting letters testamentary or of administration, without the statutory notice, will not make the order void ab initio, but that such defect is an irregularity merely, for which the letters may be revoked; and the order is not subject to collateral attack."

Viewed in the light of these authorities the contention of the contestant is clearly without merit. Additionally, that should be so here, where she has appeared and had her day in court, with full opportunity to present her claims for consideration. What is said on this point hereinabove is based on an assumption on our part, regardless of what may be the fact, that contestant was an heir of the testatrix.

It is insisted strenuously that Mr. P. B. Coolidge, who signed the will as a witness, was disqualified to serve as such or to testify in support of its probate, because he was the attorney for both the testatrix and the person named as executor and trustee under the will, Schoonmaker, and at the hearing of the contest itself was acting as attorney for the executor and re-

ceived remuneration therefor. Mention is also made of the fact that Mr. Coolidge looked after the probate of Mrs. Lane's husband's will and received compensation therefor, though why this is suggested we cannot comprehend. In this connection we are reminded by counsel of that portion of Section 88-104, W. R. S. 1931, which provides: "No subscribing witness to any will can derive any benefit therefrom unless there be two disinterested and competent witnesses to the same, but if without a will such witness would be entitled to any portion of the testator's estate, such witness may still receive such portion to the extent and value of the amount devised." This language it is said supports the point urged. We do not think so. Mr. Coolidge was not named as a beneficiary under the will, and it was not even suggested or required in that instrument that he be selected as attorney for the executor. His employment was and is contingent solely upon the executor's wishes in the matter. What compensation he has received, or will receive, as attorney for the estate is and will be in return for what he has rendered or will render the executor and the estate in legal services, the propriety of the charges made being under the exact supervision of the court.

"It has very generally been held," says 68 C. J. 678, "that the interest which will disqualify an attesting witness must be a present, direct, certain, and vested interest, and not one which is uncertain, remote, or contingent." See also 28 R. C. L. 134, § 88.

In Schieffelin v. Schieffelin, 127 Ala. 14, 28 So. 687, it was declared that it was "well settled" in that state that an attorney who writes a will may attest the same. In 1 Schouler on Wills, Executors and Administrators, 6th Ed. 623, § 553, it is said that: "The fact that the will provided that a witness should be employed by the executor as an attorney does not disqualify him."

Where the law would seem more stringent and broader in scope than the language above quoted from our Section 88-104, supra, and where the will itself directed that the lawyer who acted as one of the witnesses to the instrument should assist the executor in settling the estate, the testator being blind, the following excerpt from In re Pickett's Will, 49 Or. 127, 89 Pac. 377, presents the contention of the parties and the court's conclusion thereon:

"This evidence was not controverted; but it is contended by counsel for contestants that Dorris is disqualified under our statutes from being a subscribing witness to the will, and from testifying in support thereof, because he has an appointment in the will as attorney for the executor, and has been acting as such attorney, although by his answer he renounces all benefits under the will. The provision of the will referred to by counsel is as follows: 'I appoint Geo. B. Dorris, attorney at law, to assist the executor in settling my estate.' The statute to which counsel refer is doubtless section 5564, B. & C. Comp., which, so far as it is applicable, is as follows: 'If any person has attested or shall attest the execution of any will, to whom any beneficial * * * appointment of or affecting any real or personal estate * * * shall be thereby given or made, such * * * appointment shall, so far only as concerns such person attesting the execution of such, or any person claiming under him, be void; and such person shall be admitted as a witness to the execution of such will.' The provision of the will above referred to cannot be construed as giving or making to Dorris 'any beneficial * * * appointment of or affecting any real or personal estate,' nor can it be construed to be anything more than an advisory provision, which the executor may follow or disregard according to his own judgment. It confers no rights upon the appointee. Young v. Alexander, 16 Lea (Tenn.) 108. The fact that Dorris is acting as an attorney for the executor in the settlement of the estate, and in this contest, is of no consequence; for he could not do so without the executor's consent and employment of him, and to him

Dorris must look for his fees. The appointment of an attorney is personal to an administrator or executor."

Circumstances similar to those appearing in the Pickett case have been at least twice before the Supreme Court of Iowa. In the case of In re Rehard's Estate, 163 Iowa 310, 143 N. W. 1106, the will contained a provision which directed that in the settlement of the estate the executor "shall employ as his attorney" the lawyer who drew the will. In the later litigation of In re Kenney's Will, 213 Iowa 360, 239 N. W. 44, the will provision directed "the executor and trustee herein named, or their successors, to procure the services of" the lawyer who wrote the will at the request of the testator "as attorney for such executor and trustee in carrying out the provisions of this my last will and testament." In that case, on appeal, affirming the judgment below, the court ruled adversely to contentions akin to those presented at bar, saying:

"The point urged by counsel is that this provision of the will gave him such an interest in the estate of the testator as to disqualify him as a witness to testify to the conversations and transactions detailed on the trial. It will be observed that the witness is not named as a beneficiary nor is he given any part or parcel of the estate. If he becomes the attorney for the executor and trustee, the most he can claim is reasonable compensation for his services. The interest to disqualify the witness must be direct, certain, and definite. The exact question here presented was before us in Re Estate of Rehard, 163 Iowa, 310, 143 N. W. 1106, 1107. In that case the will directed the executor to employ the attorney who drew the will to advise and aid him in the settlement of his estate. We said: 'Objection was made to the competency of Wilkinson as a witness to the will on the ground that he was a party in interest under its provisions. This objection was overruled. We think the ruling was correct. The alleged interest of Wilkinson was indirect and uncertain. It conferred no legal right upon him whatever. The provision was not binding upon the executor nor upon the court in

the administration of the estate. The interest which would render a witness incompetent must be of a definite and legal nature. Hawkins v. Hawkins, 54 Iowa, 443, 6 N. W. 699; Quinn v. Shields, 62 Iowa, 129, 17 N. W. 437, 49 Am. Rep. 141; Bates v. Officer, 70 Iowa 343, 30 N. W. 608. The interest shown here is remote, indirect, and uncertain. It could doubtless be shown as bearing upon the weight of the testimony of the witness; but his competency was not affected thereby. There is the further consideration that by the provisions of Code, § 3275, a subscribing witness to a will is prohibited from deriving any benefit therefrom. The apparent purpose of this statute is to save the competency of a witness to a will even at the expense of the benefit which he might otherwise receive thereunder.'

"None of the cases cited by appellant from this jurisdiction are in any sense in conflict with what we said in the Rehard Case. The rule therein stated is sound, logical, and in harmony with the weight of authority in other jurisdictions."

Other points are urged as calling for a reversal of the judgment, but they deal chiefly with that phase of this case relating to heirship, which we have already indicated it is quite unnecessary for us to review. If the validity of the will in question is established, as we think it certainly has been, whether the contestant was an heir or not becomes immaterial. Being of the opinion that the judgment below was clearly right, we must order its affirmance, and that will be done.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.

ON PETITION FOR REHEARING

RINER, Justice.

A petition has been filed on behalf of the appellant and contestant below expressing dissatisfaction with the opinion and judgment of the court in this case and

requesting that a rehearing be granted. In a large measure the material thus submitted consists of a re-argument of several of the points which were hereto-fore presented at length in counsel's brief and there-after given full and careful consideration by this court. The rights of the parties would not be more thoroughly clarified, nor would the profession be aided, by en-larging and amplifying those matters at this time. We are thoroughly satisfied that in directing an affirm-ance of the judgment of the district court of Fremont County, a result was reached entirely consonant not only with the law of the case, but, also, with reason and justice.

The petition for a rehearing itself, however, pre-sents for our consideration some things which require attention, the first of these to be mentioned being the suggestion of counsel that this court could not rightly examine the original certified record on file herein and refer to testimony in evidence not contained in the document heretofore filed by appellant in this cause and designated "Abstract of Record on Behalf of Ap-pellant." It is said that this is so because of our Rule 37 requiring the preparation of abstracts of record. Counsel is in error. The rule mentioned will be searched in vain for any language which would justify any such contention. Its requirements by its terms are imposed upon the parties and their counsel.

The purpose of an abstract of record is to aid the court in the dispatch of its business, by accurately and concisely presenting those portions of the record which deal with the questions which all the parties involved desire the court to consider—not merely the evidence in behalf of the party bringing the case here—thereby releasing the court from the labor of searching through the record, often voluminous, to ascertain such neces-sary parts. 4 C. J. 386 and cited cases; 2 R. C. L. 155.

When an abstract is carefully prepared through intelligent compliance with the rule, it, like an ably constructed brief, is of the greatest assistance to the court in speedily and accurately disposing of its business. When briefs and abstracts are not well done they afford very little help, and, frequently, merely waste the time of the judges who try to use them. It is a source of satisfaction to remark that the overwhelming majority of the legal profession of this state realize that this is so.

The original record, certified as true and correct, is always on file in the case here, and it must invariably be looked to as the arbitrator of disagreements between parties as to the accuracy of abstracts submitted under our rule. In some jurisdictions abstracts are intended to and do stand as a substitute for and in lieu of the record itself. See Craig v. Scudder, 98 Mo. 664, 12 S. W. 341. Our practice is not so ordered, and while this court is not bound to go to the record, it may always do so, in its discretion, if it desires fuller information than appears in the abstract or abstracts submitted by the parties. Denver etc. R. Co. v. Vitello, 34 Colo. 50, 81 Pac. 766.

In the case of In re St. Clair's Estate, 46 Wyo. 446, 28 Pac. (2d) 894 (a comparatively recent case), we had occasion to consider an abstract of record prepared by the counsel who now represents the appellant in the instant litigation. We there said:

"Rule 37 of this court, in the course of its requirements, directs that:

" 'In the case of oral testimony and depositions, the substance shall be reduced to narrative form except where, with respect to material portions of the record, it is deemed necessary to use the exact language thereof.'

"This was not done. Even the names of the witnesses testifying are in some instances omitted from the ab-

stract, and parts only of their testimony are set forth. We find, also, that argument on the merits of the case is undertaken to be woven into the supplemental abstract with statements taken from the record itself. This should not be done. The proper place for argument, it should hardly be necessary to say, is in the submitted briefs of the parties. Under the decision of this court in Simpson v. Occidental Building & Loan Ass'n, et al., 45 Wyo. 425, 19 P. (2d) 958, we might very properly decline to grant leave to file the supplemental abstract, and forthwith dismiss the appeal."

This was an earnest effort on our part to aid counsel in thereafter reaching a proper understanding of and a due compliance with the plain language of Rule 37. The record in that case was a short one, and we accordingly examined it, notwithstanding the fact that the abstract submitted disregarded the rule. However, it was expressly stated that such action on our part would not be considered as a precedent for doing so in the future.

In the case at bar, the testimony in the original record comprises about two hundred fifty typewritten pages, of which nearly one-half was testimony introduced on behalf of appellant. Yet, we find appellant's abstract of record, purporting to cover all the testimony in the case, embraced less than four and one-half pages of typewritten material. This only was submitted, despite the fact that one of the main questions in the case was whether the court erred in directing a verdict against appellant, thus requiring of us a thorough review of the evidence.

The testimony of the medical witnesses, Dr. Holtz and Dr. Smith, was outlined in the opinion from our examination of the original record. Appellant's abstract of their testimony reads verbatim:

"Dr Holtz—
Q 1398—pg 356—her hearing was prbably 70 or 80% A 7/10ths

Q 1414—pg 357—She was quite ill—one disease was bronchitis9Q 1418)

Dr Smith

Q 1438—pg 360. he treated her June 28-31—July 7, 1931; July 30 1931—Aug 21, 1931 Feb 9, 1932.) This evidence shows illness July 30, 1931, and a physician attending her the day before the will was executed."

The testimony of E. E. Coon, one of the witnesses to the will, as disclosed by the original record, is also set forth in condensed form in the original opinion. The verbatim statement in appellant's abstract of this material is:

"Q 1816, pg 396, was a leading question, and prejudicial, and suggestive.

Q 1818—Mrs Lane never talked about the will until after it was executed.

Q 1829—P 397-8. Coon tells what she said afterwards, as tho she said it at the time the will was executed. And the jury so understood. Motion to strike overruled.

Q 1834—called for conclusions—1835 Same

Q 1836 was improper and prejudicial.

Q 1837. Was calling for a conclusion of the witness, and not giving facts for the jury.

Q 1838-9-40 were of the same character, and was merely calling for the opinion of the wintess, his conclusion and not giving facts, from which they could determine whether there was undue influence.

Q 1862. She mentioned these other estates after that time.

Q 1865-6 Mrs Lane wanted the estate protected, so it could not be frittered away.

Q 1869-70. Mrs Lane could not have understood the will, because it provided that the very thing she sought to make impossible, could be done. The trustee, could, that is had opportunity, and every where, every day, trusted bankers, trusted fiduciaries do the

148

same thing. The question shows she had over confidence in Schoonmaker, and did not have the ability witness Coon attempted to picture. She did not fully understand the will and the possibilities for frittering away, and preventing it from ultimately reaching her desired legattees. And this was for the jury.

Q 1872. Mrs Lane had extreme if not over confidence.

Q 1881—Witness Coon, read the will, heard it read, and got a pretty good idea of it.

Q 1886—pg 405. Witness Coon knew A D and Sarah Lane had made wills. Did not know the contents, but knew they were very kind to Albert McLaughlin.

Q 1890. Coon says they did not discuss at all the property

Q 1895. Coon says Mrs Lane had a wonderful keen mind. And witness Coon himself would not sign such a will unless Schoonmaker was trustee.

Page 407. Trustee Schoonmaker is using the estate himself for his private business soon after his appointment. Q 1903 The court excluded further evidence on this point."

It is quite evident from the foregoing illustrative excerpts from appellant's abstract that neither Rule 37 of this court nor its opinion in the St. Clair case supra, have been regarded by counsel in the preparation of the abstract submitted herein. It is likewise perfectly plain that the cause was subject to dismissal pursuant to said Rule and our decisions thereunder. Simpson v. Occidental Building & Loan Association, 45 Wyo. 425, 19 Pac. (2d) 958; In re St. Clair's Estate, 46 Wyo. 446, 28 Pac. (2d) 894; Bosick v. Owl Creek Coal Co., 48 Wyo. 46, 41 Pac. (2d) 533. We have repeatedly said that we prefer to dispose of cases on their merits rather than because of infractions of rules of practice. That is the reason we took the trou-

ble to examine the long record in the case at bar when we found the submitted abstract of record practically useless. We cannot continue to do this if the business of this court is to be promptly disposed of as it should be. It would seem that more drastic action must hereafter be taken if counsel continue to disregard our rules and the warnings contained in the opinions rendered and printed in our state reports for ready access by all interested. If opposing counsel do not move for a dismissal—as in this case could very properly have been done—the court itself will be compelled to take that action as the right of the matter may appear.

The petition for a rehearing also asserts that the opinion on file "quotes the attesting witnesses, who are interested parties, to the effect 'that the testatrix fully understood the will' ", and that such statements were inadmissible as merely opinions of these witnesses. Counsel is again in error. As a matter of fact, these witnesses were quoted as testifying that Mrs. Lane, after talking over the provisions of the will with them before she signed it, told them at that time that the will "was exactly as she wanted it" and that "it suited her"; and that "many times after the execution of the will" the testatrix expressed her "absolute satisfaction" with it to the witness Coon and explained to him "the reasons why she had directed that the several legacies and trustee provisions be placed therein."

It is held in many jurisdictions that "where the state of the testator's mind is in issue that is a proper subject of inquiry, and his declarations indictative thereof are admissible," and, also, that his declarations are admissible to show his knowledge of the contents of the will. 68 C. J. 1006. As remarked by the supreme judicial court of Massachusetts in Shailer v. Bumstead et al., 99 Mass. 112, 120:

"The declarations of the testator accompanying the

act must always be resorted to as the most satisfactory evidence to sustain or defend the will whenever this issue is presented. So it is uniformly held that the previous declarations of the testator, offered to prove the mental facts involved, are competent. Intention, purpose, mental peculiarity and condition, are mainly ascertainable through the medium afforded by the power of language. Statements and declarations, when the state of the mind is the fact to be shown, are therefore received as mental acts or conduct."

There cannot be the slightest doubt that Mrs. Lane's statements, as testified to by these witnesses on this point, were admissible evidence of the "most satisfactory" kind to the effect that she fully understood the provisions of the will in question.

Appellant maintains that the opinion of the court in this case was erroneous in considering testimony given by respondents, and that in reviewing the action of the trial court in granting the motion for a directed verdict only the evidence introduced in behalf of the contestant could be considered, with all reasonable inferences to be drawn from it. This proposition is inaccurate, and the contention cannot be upheld. 64 Corpus Juris 443 states the rule as to what evidence should be considered on a motion to direct a verdict in this language:

"The testimony to which the court is to look for circumstances making out the case of the adverse party includes the whole testimony in the case and is not limited to that offered by such party but extends as well to that produced by the movant."

That this should be the rule is evident when it is considered that the testimony of the movant may either supply a defect in that offered by the adverse party in support of his case or explain it in such a way as conclusively to render it utterly and completely ineffective. It is assuredly the duty of the court to survey the entire evidence in the case, where, as here, a motion

to direct a verdict was made after the evidence of the parties had all been introduced. If this is not done, an unjust and inaccurate result might easily be reached.

It is true that all evidence favorable to the party adverse to the motion must be regarded by the court in the disposition thereof and, also, all reasonable inferences which may be deduced therefrom. But the inferences must be reasonable and legitimate. They cannot be strained or the result of mere conjecture or surmise. There must be some proper connection between the fact proven and the inference drawn. In the recent case of Antonowich v. Home Life Insurance Co., (W. Va.) 179 S. E. 601, 603, it was pointed out that:

"While the inference to be deduced from evidence is ordinarily a question for the jury, the sufficiency of the evidence to warrant the inference is a question of law for the court. 64 C. J., subject Trials, §317. The fact inferred should attend naturally and rationally the fact proven. Central of Ga. Ry. Co. v. Teasley, 187 Ala. 610, 617, 65 So. 981. 'It is not enough that the facts proven permit an inference of a certain other fact sought to be established, but the inference must be the only one which can fairly and reasonably be drawn from the facts. * * * And naturally so, else the jury would be free for guesswork.' " (Citing cases.)

In Campbell v. Washington Light & Water Co., 171 N. C. 768, 88 S. E. 630, it is said:

"Evidence which shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture, is not sufficient to be left to the jury. Byrd v. Express Co., 139 N. C. 273, 51 S. E. 851; State v. Vinson, 63 N. C. 335.

"As is said by Mr. Justice Walker in Campbell v. Everhart, 139 N. C. at page 516, 52 S. E. 201:

" 'The sufficiency of evidence in law to go to the jury does not depend upon the doctrine of chances. However confidently one, in his own affairs, may base his judgment on mere probability as to a past event, when

he assumes the burden of establishing such event as a proposition of fact, and as a basis for the judgment of a court, he must adduce evidence other than a majority of chances that the fact to be proved does exist. It must be more than sufficient for a mere guess, and must be such as tends to actual proof.' "

The same court in Jones v. Bagwell, 207 N. C. 378, 177 S. E. 170, more recently remarked that:

"It is well settled that the evidence must be more than a scintilla to be submitted to the jury. If it only raises a suspicion, a conjecture, a guess, a surmise, a speculation, it is not sufficient. Denny v. Snow, 199 N. C. 773, 774, 155 S. E. 874."

Finally this court, in Wright v. Conway, 34 Wyo. 42, 242 Pac. 1107, in denying a petition for rehearing, has adopted a similar view, for it was there said:

"Guess-work cannot be substituted for evidence or inference, for 'an inference is the conclusion drawn on reason from premises established by proof. In a sense, it is the thing proved. Guess-work is not.' Whitehouse v. Bolster, 95 Me. 458, 50 A. 240."

The evidence relied on by contestant to establish her position relative to the competency of the testatrix to make the will under consideration, was fully reviewed in the opinion filed. It is perfectly obvious that these facts, viz., that the testatrix was blind, was eighty-one years of age, did not have an altogether normal hearing, had a physician call on her the day before the will was signed, disliked her former daughter-in-law, Mrs. Baerwald, assuming that to be true as testified to by a witness for contestant, the use of Mrs. Baerwald's former name of Lane in the will designating her as a legatee thereunder, and the failure to name appellant as one of the legatees of the will, neither separately nor collectively would, without more, warrant a jury in finding the testatrix incompetent to make the will. Such a finding, if made, upon such evidence, would

have to be the result of guess-work simply and pure conjecture. Such a verdict would have no reasonable justification. We have no hesitation in declaring that property rights may not thus be disposed of in the courts of this state.

Our conclusion accordingly is that the petition for a rehearing should be denied.

*Rehearing denied.*

KIMBALL, Ch. J., and BLUME, J., concur.