In the Matter of the ESTATE of Mrs. Mary
MERRILL, Deceased.

Georgia K. MERRILL, Proponent and Appel-
lant, Alberta A. Webber, Landis Webber
and Florence M. Bannon, Proponents,

v.

Mary Kay VAN ETTEN, Contestant, and
Ellis Merrill and Beverly Merrill Carpenter,
Contestants and Respondents.

No. 2808.

Supreme Court of Wyoming.

June 30, 1959.

341 Pac.2d 506

278

Moran, Murphy & Hettinger, Riverton, for appellant.

Don D. Bowman, Denver, Colo., and Chester Ingle, Thermopolis, A. Joseph Williams, Cheyenne, for respondents.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

280

## OPINION.

PARKER, Justice.

This is an appeal from a judgment rejecting probate of the July 7, 1953, will of Mary Merrill after a jury had rendered a special verdict finding that at the time of executing the instrument she was not of sound and disposing mind and memory and was acting as a result of undue influence.

Mary Merrill and her husband, George Merrill, were pioneer Wyoming ranchers possessed of numerous holdings. Mr. Merrill died in 1934. They were the parents of seven children, two of whom predeceased Mrs. Merrill, one died subsequent to the trial below, and four are still living. The three who are deceased left children surviving them.

Prior to July 7, 1953, Mrs. Merrill had made at least two other wills and had caused certain transfers to be effected for tax reasons. None of these facts appear to us to have more than a passing interest in the trial. Mrs. Merrill, past eighty-four at the time of her death and past eighty-three at the time she made the 1953 will, was quite deaf, almost blind, and intermittently in bad and improved states of health.

The specifications of error recite insufficiency of the evidence to support the verdict and judgment, erroneous instruction of the jury, some seventy-seven improper rulings on evidence, and the denial of attorney fees to the proponents.

We first consider whether or not the evidence as to testamentary capacity was sufficient to support the verdict, and in so doing ascertain upon whom fell the burden of proof. Respondents say that the guardianship of the estate of Mary Merrill, instituted in 1952 and undissolved on July 7, 1953, together with testimony regarding decedent's condition, places the instant case under the exception mentioned in our opinion, In re Lane's Estate, 50 Wyo. 119, 58 P.2d 415, 419, 60 P.2d 360, where we said:

> "In our examination of contestant's claims, it is proper to recall in this connection that it was pointed out in Wood v. Wood, 25 Wyo. 26, 164 P. 844, 852, that the burden of showing an alleged incompetency of the party making the will rests upon the contestant 'unless the case should be brought within the exception where previous incompetency is admitted or sufficiently shown to change the burden.' * * *"

We cannot agree with respondents for two reasons. First, even assuming that the guardianship proceedings were proper evidence, which we do not need to determine at this time, we note that the petition in the guardianship proceedings was quite explicit that the reason Mrs. Merrill was unable to manage and administer her property was because of her *physical* condition. Nothing was said about mental incompetency in the petition. Therefore, any reference to "an incompetent" in the subsequent papers in the guardian-

ship file could not be taken to refer to a mental condition of the ward. Second, under the mentioned pronouncement in the Lane case, the exception which would change the burden of proof does not stem from the nature of the evidence on incompetency adduced at the trial but rather from a previously proven or admitted mental incompetency. Accordingly, the burden of proof in this case rested upon the contestants. This being true, we look to the evidence on which they relied to show that Mary Merrill was not of sound and disposing mind and memory at the time of the execution of the will.

In the main, those witnesses who stated or intimated that Mary Merrill was not of sound and disposing mind and memory on July 7, 1953, based their appraisal that she lacked testamentary capacity upon strange reasons such as (1) she would not have made the kind of will she did if she had been of sound mind, (2) she (almost totally blind and deaf) would occasionally ask questions as to the whereabouts of persons with whom she had just been speaking, and (3) she didn't understand the will because the witness himself couldn't understand it.

As in any other appeal, this court must assume the truth of the evidence in favor of the successful party, ignore that of the unsuccessful party in conflict therewith, and give that of the successful party every favorable inference which may be reasonably drawn therefrom. In re Johnston's Estate, 63 Wyo. 332, 181 P.2d 611; In re Anderson's Estate, 71 Wyo. 238, 255 P.2d 983.

Contestants on several occasions asked of different lay witnesses whether or not they thought Mary Mer-

rill was of sound and disposing mind and memory, and whether they thought she was incompetent. Appellant objected to such questions on two grounds: First, that there was not background to show the witnesses' observation of the decedent at the time of the execution of the will, and second, that an opinion was improper. As to the first, we are aware that observations as to a testator's condition are often limited to the precise time of the execution of the will. However, there is nothing in the record indicating any sharp change in Mrs. Merrill's mental condition over a period of several years, and we are therefore unconvinced that the objection on this ground had merit. As to the second cause for objection, we are inclined to agree. In the cases which we have examined, the attempt to secure opinion evidence from lay witnesses concerning testamentary capacity has employed many different words and phrases, including: mental unsoundness, competency, incompetency, mental capacity, capacity to make a will, capable of making a will, a mind sound enough to make a will, etc. The exact form of the question is not of great importance.

Although nonexpert opinions as to mental capacity have been received by courts on occasion in the past,[1] most courts have been conscious of the inherent danger of invading the province of the trier of fact by so doing and have tended to limit the lay witness to a statement of the actual things that were seen, heard, or experienced by him without permitting him to voice his opinion or conclusion. Judge Blume's statement in In re Johnston's Estate, supra, at 181 P.2d 618, "Laymen, too, are competent witnesses when they re-

[1] 20 Am.Jur.Evidence § 856; 7 Wigmore on Evidence, 3 ed., § 1933.

late the facts on which their observations are based, and the weight to be attached to the testimony of expert as well as nonexpert witnesses is for the trier of facts," did not quite say this but implied it. We think the voicing of opinion as to testamentary capacity by a person who is not especially trained tends to invade the province of the jury and should not be permitted. See 7 Wigmore on Evidence, 3 ed., § 1958; 57 Am.Jur. Wills § 129; Annotation, 155 A.L.R. 281, 284.

Even courts which have accepted opinions of lay witnesses on mental unsoundness of a testator have restricted the effect of the testimony to the reasons given for the opinion. In re Dupont's Estate, 60 Cal. App.2d 276, 140 P.2d 866, 871. Important as is the proper limitation of nonexpert opinion evidence, it is not determinative in the present situation since the facts upon which the witnesses here based their views fell far short of meeting contestant's burden of showing that Mary Merrill lacked the capacity to make a will.

We pass then to the sufficiency of the evidence as to contestants' claim of undue influence. It is not denied that the burden of proof was upon them, and we think it was. Wood v. Wood, 25 Wyo. 26, 164 P. 844. The testimony on which reliance is placed is quite difficult to follow. In its aspect most favorable to the contestants it could be interpreted to show that the proponents of the will were with deceased most of the time prior to her death; that one of them, Alberta Webber, arranged with the lawyer, R. L. Moran, to come to the Red Creek Ranch on the day that the will was drawn, that prior to that time she had said she did not want the children of her deceased sister, Margaret Brown, to inherit from her mother and that af-

ter the will had been drawn she was alleged to have said that she had arranged it so that her sister, Mary C. Merrill, would never mismanage her mother's property again; that certain of the children and grandchildren received amounts less than others; and that they received amounts less than they would have had under other wills and less than they would have received if a prior transfer had remained effective. It is difficult for us to agree that this type of testimony could reasonably be found either by a court or jury to constitute undue influence, and respondents' arguments are unconvincing. After relating the facts about Mrs. Merrill's infirmities, they merely say that they do not rely upon these facts to prove the undue influence but rather upon these together with a disparity between the shares given to the natural objects of her affection —inconsistent with prior dispositions of her property and inconsistent with her previously expressed intention to treat all of her grandchildren and children equally. They cite only one case, In re Conroy's Estate, 29 Wyo. 62, 211 P. 96, 99, to substantiate their position:

> "It is not necessary to cite authorities to sustain the proposition that undue influence, seldom susceptible of direct proof, may be established by proof of facts from which it may be fairly and reasonably inferred."

This statement correct as it is has little persuasion in the present situation. The rules governing the burden of proof and the necessity of showing of alleged undue influence of testator have often been discussed by this court. In Cook v. Bolduc, 24 Wyo. 281, 157 P. 580, 581, 582, 158 P. 266, it was said:

> "* * * Wills deliberately made by persons of sound mind are not to be lightly set aside, and the

undue influence which will warrant doing so must be proven to be such as destroys the free agency and thereby substitutes the will of another for that of the testator. * * *"

We referred to this holding in In re Anderson's Estate, 71 Wyo. 238, 255 P.2d 983, 986, and again in In re Nelson's Estate, 72 Wyo. 444, 266 P.2d 238, 250. We held in the Nelson case that the mere showing of susceptibility to undue influence is not sufficient to invalidate a will, but such susceptibility must be connected with evidence of actual undue influence exercised upon the testatrix. We also held in that case that the testatrix has no duty to make an equal division of her property among her relatives and failure to do so does not make dispositions unnatural.

As to the alleged undue influence, the trial court instructed the jury that the contestants must prove by the preponderance of the evidence: a confidential relationship between proponents and decedent; that decedent's condition was such as to permit a subversion of her freedom of will; that there was activity controlling the testamentary act on proponents' part; that the will appeared to be the result of such influence; and that the free agency of the testatrix was destroyed and the will of others substituted in its place. On the basis of these criteria, we think the contestants' evidence falls short of sustaining the burden of proof.

A consideration of all of the evidence in the record fails to show that Mrs. Merrill was of unsound mind and memory at the time she executed the will on July 7, 1953, and likewise fails to show that she was under undue influence. To the contrary, it shows that she was of sound mind, was cognizant of her family situation, of the extent of her property, of her physical

disabilities, and of the probable short duration of her life. The verdict of the jury that the will signed by Mrs. Merrill July 7, 1953, was the result of undue influence being exerted over her and that she was not of sound and disposing mind and memory at that time was against the overwhelming weight of the evidence and had no substantial evidence to support it. It may be that the jury was unduly influenced by the repeated reference to the guardianship matter and the denomination of deceased as "an incompetent." Although the record of a guardianship has been held to be competent evidence in a proceeding to determine the validity of a will, a showing of the appointment of a guardian does not make out a prima facie case of incompetency, raises no presumptions of insanity, and has often been held to be entitled to little or no weight. See 2 Page on Wills, 3 ed., § 805; Thompson on Wills, 3 ed., § 70; and generally see 94 C.J.S. Wills §§ 46, 64; 57 Am.Jur. Wills §§ 110, 135.

"* * * An order having a guardian appointed would not necessarily be inconsistent with testamentary capacity because guardianship may only indicate an inability to manage property or business affairs. * * *" 36 Tex.L.Rev. 18.

Most of the cases to which reference is made in these authorities are limited in the assistance they provide since they relate to cases dealing with wards who admittedly have had mental difficulties, sometimes having been found to be insane. Even in such cases, courts have been very careful to say that the adjudication in a guardianship or insanity matter is not one which can be carried over into the finding as to the validity of a will. In this case, it is abundantly clear that there was no intimation in the guardianship of mental incompetency of Mary Merrill.

Without speculating on whether or not the jury in this case was misled into giving undue weight to the guardianship proceeding, we feel obligated to say that the refusal of the court to instruct as to the limited effect of the guardianship was error which was prejudicial to the proponents. One of the instructions requested and refused, 5A, stated:

"You are instructed that the fact that a person was or might be under guardianship at the time when he or she executes a will does not, of itself, in any manner prevent that person from making a valid will. A person under guardianship may execute a will as freely as any other person."

Another such instruction was 6A:

"You are instructed that the Guardianship, concerning which testimony in this case has been given, and the file of which is in evidence as Contestants' or Plaintiffs' Exhibit 1, constitutes no adjudication of incompetency or determination of mental incompetency. The Guardianship here concerned is a guardianship of the estate or property and was instituted without legal hearing or judicial determination. It may be considered by you, along without [apparently intended to be with] evidence in the case as bearing on the question of whether or not, on July 7, 1953, Mrs. Mary Merrill possessed testamentary capacity. It is not, and is not to be construed as being determinative of that question."

Perhaps these instructions could have been better worded, but in any event the jury should have been instructed on the subject if they were to have reasonable latitude in evaluating the guardianship proceedings.

Perhaps the views of Chief Justice Blume in In re Hartt's Estate, 75 Wyo. 305, 295 P.2d 985, 1002, might properly receive further consideration in a case such as the one before us.

"* * * He [the testator] accumulated it; he could have given it away in his lifetime * * *; he could have disposed of it in his will as he desired, if not contrary to law * * *. It is, and for many centuries has been, a common thought in our economic system, that to execute a last will and testament is the most solemn and sacred act of a man's life. * * * It would not be becoming of us to give men and women to understand that as soon as they are lowered in the grave, those upon whom they have bestowed their bounty may engage in a scramble over the property at will. To say that would, we think, be poor public policy, contrary to the interests of society and should not be encouraged."

The cause is reversed with direction to admit the will to probate.

We should not end the discussion of this case without mentioning several matters which have been argued.

A. Appellant has filed a motion to strike appearance and enter default against respondents on the ground that they did not file their papers in time. We have made no attempt to dispose of the case on this basis: First, because we preferred that it should be resolved upon its merits; and second, because extensions, repeatedly granted with mutual consent of proponents and certain contestants, seemed reasonably to include all parties. Moreover, the contestants now remaining could scarcely have proceeded with any effective presentation of the case until the other extensions had been concluded.

B. Appellant moved for a new trial on the ground that the transcript of evidence disclosed numerous errors and the undue delay in the preparation of the transcript prevented any proper correction except by a new hearing. This motion was overruled. In view of the disposition of the case, we do not pass upon the propriety of the court's ruling on this point. Suffice to say that the charge is a serious one, that the activities of a court reporter are within the jurisdiction of the trial court, subject to the constitutional provision which places superintending control in the supreme court. Any complaint regarding delay or incorrectness of transcripts should be most carefully investigated by the trial court of jurisdiction so that its findings may here be reviewed to insure justice to all.

C. The trial court disallowed proponents attorney fees. Appellant's counsel concede that this matter is within the sound discretion of the trial court, and we agree. That court's decision on the point should not be reversed unless there was an abuse of the discretion accorded to it. However, it is our view that in the light of the above-quoted pronouncement in the Hartt case the wishes of a testator should be given consideration, and this is not practically possible unless an attorney is provided to present the matter properly. Accordingly, attorney fees should be allowed to the proponents of a will unless it should appear to the court from the evidence that the contentions of the proponents are without merit. In the instant situation, direction is made that the trial court allow the actual expenses and a proper fee to proponents' counsel for services in presenting this matter below. Since we think that the appeal to this court had merit, attorney fees should be granted therefor, and we fix the amount

at $1,000 which should be considered by the trial court as a proper charge against the estate.

Reversed with directions.